694 So.2d 613 (1997)
Hoyet Lynn CHANCE, Plaintiff-Appellee,
v.
Bonnie Sue Hand CHANCE, Defendant-Appellant.
No. 29591-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
*615 Barry G. Feazel, Shreveport, for Defendant-Appellant.
Love, Rigby, Dehan & McDaniel by Kenneth Rigby, Shreveport, for Plaintiff-Appellee.
Before NORRIS, HIGHTOWER and WILLIAMS, JJ.
HIGHTOWER, Judge.
An April 1992 divorce judgment ended the thirty-one-year marriage of Dr. Hoyet Chance and Bonnie Chance and, retroactively to February 3, 1992, terminated the community of acquets and gains. After stipulations resolved several aspects of the subsequent partition litigation, the remaining issues came before the trial court in March 1996. Concerning six facets decided adversely to her at that hearing, the former wife now appeals. Finding no error in the rulings, we affirm.

DISCUSSION
In valuating and allocating assets and liabilities to partition community property, the trial court shall act within its broad discretion to consider the source and nature of each asset or liability, the financial situation of each spouse, and any other relevant circumstances. La. R.S. 9:2801(4)(c); Hare v. Hodgins, 586 So.2d 118 (La.1991). Likewise, the trial court is not required to accept at face value a spouse's valuation of assets, debts, or claims against the community. Bedenbender v. Bedenbender, 28,579 (La.App.2d Cir. 08/21/96), 679 So.2d 506; Barrow v. Barrow, 27,714 (La.App.2d Cir. 02/28/96), 669 So.2d 622, writ denied, 96-1057 (La. 06/21/96), 675 So.2d 1080. Furthermore, absent manifest error or unless clearly wrong, a trial court's factual findings or credibility *616 determinations may not be set aside by an appellate court. Id.

Mortgage Payments on 1991 GMC Pickup Truck
At the partition hearing at hand, the former spouses valued their 1991 GMC pickup truck at $10,000 and agreed that Dr. Chance would retain the asset. The parties also concurred that, after termination of the community, the ex-husband paid installments on the vehicle. Consequently, for one-half of those expenditures, he sought reimbursement. Although conceding the correctness of the amount requested ($4,887), appellant cites Gachez v. Gachez, 451 So.2d 608 (La. App. 5th Cir.1984), writ denied, 456 So.2d 166 (La.1984), in contending that mortgage payments on a depreciable asset are not reimbursable.
We disagree. Under La. C.C. art. 2358, upon termination of a community property regime, a spouse may assert reimbursement claims against the other spouse. More directly, if separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had when used. La. C.C. art. 2365.
Here, Dr. Chance paid a community debt, the note on the truck, from his separate estate. Although he enjoyed the exclusive use of this vehicle, it continued to be an asset of the community after the judgment of separation. Apparently, our colleagues of the third, fourth, and fifth circuits have elected to treat such reimbursement claims differently, depending upon whether the mortgage payments pertain to movable or immovable property.[1] Even so, we concur with the first circuit that La. C.C. art. 2365 makes no such distinction. See Williams v. Williams, 509 So.2d 77 (La.App. 1st Cir.1987). Thus, the trial judge did not err in granting Dr. Chance the reimbursement in question.

Rental Value for Use of Family Residence
Mrs. Chance next asserts that the district court wrongly refused her a credit for the fair rental value of the former family home. But, inasmuch as appellant failed to submit such a request prior to the partition hearing, we find no error in the ruling.
On February 28, 1992, in a combined rule nisi and answer to the divorce petition, Mrs. Chance applied for use of the matrimonial domicile. The next month, a judgment granted her occupancy of the home until June 6, 1992, when Dr. Chance would move into the residence. Neither party sought nor did they receive, at that time, an award for the fair rental value of the house while inhabited by the other spouse. Later, on two separate occasions, Mrs. Chance raised other issues concerning the residence but never demanded rent from her ex-husband. Finally, at the partition hearing, she proposed for the first time that she be granted a credit for the rental value of the home. The lower court concluded, and we agree, that this request came too late.
Once the community of acquets and gains has been dissolved by separation, the spouses become co-owners, or owners in indivision, of the marital home. As such, they are entitled to the use, enjoyment, and disposition of the property. La. C.C. arts. 477, 480; McConathy v. McConathy, 25,542 (La.App.2d Cir. 02/23/94), 632 So.2d 1200, writ denied, 94-0750 (La. 05/06/94), 637 So.2d 1052. A corollary right permits use and occupancy of the property by the co-owner without the payment of rent. McConathy, supra; Jones v. Jones, 605 So.2d 689 (La. App. 2d Cir.1992), writ denied, 607 So.2d 571 (La.1992). Of course, pursuant to La. R.S. 9:374, the trial court may order rental payments on the family home. Such an order, however, must be made at the time of the award of use and occupancy. The trial court does not have, at the time of partition, blanket discretion to order retroactive rental payments. Id. Clearly, then, the district judge did not err in denying Mrs. Chance's tardy request.

*617 Interest in Dr. Chance's Medical Practice

The next issue concerns a twenty percent community interest in the ex-husband's medical practice, Urology Associates. After considering the testimony of two certified public accountants regarding this asset, the trial court accepted the valuation established by Dr. Chance's expert, Steven Bayer. Appellant argues that Charles Gibson's calculations, presented by her and based upon a capitalization of earnings, should have been recognized as more appropriate.
Where expert testimony differs, it is the trier of fact who must determine the more credible evidence, and factual findings based upon that determination may not be overturned unless manifest error appears in the record. Hebert v. Southwest Louisiana Elec. Membership Corp., 95-405 (La.App. 3d Cir. 12/27/95), 667 So.2d 1148, writ denied, 96-0798 (La. 05/17/96), 673 So.2d 608; Caravalho v. Dual Drilling Services, Inc., 93-560 (La.App. 3d Cir. 02/02/94), 631 So.2d 725, writ denied, 94-0878 (La. 05/13/94), 637 So.2d 1074. The fact-trier is entitled to assess the credibility and accept the opinion of an expert just as with other witnesses, unless the stated reasons of the expert are patently unsound. Hickman v. Exide, Inc., 28,495 (La.App.2d Cir. 08/21/96), 679 So.2d 527. Of course, the effect and weight to be given such expert testimony depends upon the underlying facts and rests within the broad discretion of the trial judge. Adams v. Commercial Nat'l. Bank, 27,360 (La.App.2d Cir. 09/27/95), 661 So.2d 636. Moreover, in deciding to accept the opinion of one expert and reject that of another, a trial court can virtually never be manifestly erroneous. Hebert, supra.
To valuate the medical practice, Bayer assigned values to the various components and holdings of the partnership. Although Mrs. Chance's expert, Gibson, began with this same approach, he eventually added approximately $830,000 to represent the future cash flow of the business. That figure resulted from capitalizing, or applying a 2.5 multiple to, Dr. Chance's earnings for the last twelve months preceding the community's termination. Appellee asserts that this sum represents "goodwill" and should not be included in the assessment.
It is well-settled that goodwill does not form a part of the corporate assets of a medical practice in that the goodwill results from the physician's professional medical competence and his relationship with patients, not from any affiliation between the corporation and the patient. See Preis v. Preis, 94-442 (La.App. 3d Cir. 11/02/94), 649 So.2d 593; Pearce v. Pearce, 482 So.2d 108 (La.App. 4th Cir.1986), writs denied, 484 So.2d 140 (La.1986); cf. Barrow, supra. As indicated in Karageorge v. Cole, 565 So.2d 502 (La.App. 2d Cir.1990)[2], goodwill is the value of a business over and above the value of its physical property. Though disagreeing with that definition, appellant's expert conceded that the $830,000 figure constituted a value assigned in excess of the physical assets involved. This method of capitalizing earnings, as Gibson acknowledged, also assumes that future operations will be similar to current operations. Such a supposition obviously would be inappropriate here; Dr. Chance's present health significantly curtails his ability to practice medicine.
Very importantly too, Bayer's valuation utilized the same technique twice recently employed in separate arms-length transactions, when one physician bought into the practice and when another doctor sold out.[3] We thus find no error in the trial court's conclusion that this method provided the more reliable indication of value.

Accounts Receivable of Urology Associates
Next, in addressing the medical practice's accounts receivable, appellant again challenges the trial court's acceptance of the value assigned by Bayer rather than Gibson. Both accountants subtracted certain contractual discounts (Medicare, private insurance, etc.) and granted further reductions *618 for debts considered bad or uncollectible. Gibson then calculated a 70.13 percent historical collection rate, while Bayer actually utilized an average collection rate of 80 percent. Even so, Mrs. Chance's expert arrived at a greater value by choosing not to assign any cost of collections, in contrast to Bayer.[4]
This court has previously approved the use of average collection ratios in valuing accounts receivable. See Barrow, supra. And, as for the district court's conclusion that Bayer properly discounted his figure by the cost of collection, we find no error in that determination. Under such circumstances, the acceptance of one expert's opinion over that of another is not clearly wrong. See Hebert, supra.

Prostate Center Income
For ultrasound testing procedures, the physicians at Urology Associates refer their patients to the Prostate Center ("PC"). This limited partnership is owned one-half by the general partner, Urology Associates, while the other fifty percent interest is held by various children and spouses of the physicians. PC profits, thus, are logically distributed according to the ownership percentages. Those proceeds received by Urology Associates eventually flow to the physicians there, based upon their productivity. For example, if a doctor fails to refer any patients to PC, he receives none of this income. Similarly, if the patients of one urologist account for thirty percent of PC's business, that physician collects thirty percent of Urology Associate's share of the profits.
Dr. Chance, although a partner in Urology Associates, participates in any PC profits only in the above-mentioned manner. As a result, the trial judge held those distributions, after termination of the marital regime, to be appellee's separate income. Not oddly, appellant disagrees with that conclusion. Arguing that the manner of allocation cannot change the character of the income, Mrs. Chance contends that monies received from PC are returns on a community investment, i.e., civil fruits, and thus comprise community property. See La. C.C. art. 2338.
As reflected by his ruling, however, the trial judge concluded that Dr. Chance's disbursements from PC are generated by his professional skill and effort, and, thus, constitute separate property. We discern no error in that determination. When referring individuals to the testing facility, the doctors accompany their patients, supervise the procedures, and interpret the results. Further, as noted by Dr. Chance, if his efforts produce no income for PC, he receives no portion of the profits. Cf. Ogden v. Ogden, 331 So.2d 592 (La.App. 1st Cir.1976), writ denied, 337 So.2d 523 (La.1976), reaching a different result where the division of profits bore no apparent relationship to work performance.

Disability Income
Mrs. Chance finally contests the trial court ruling that her ex-husband's monthly disability benefits became his separate property after termination of the marital regime. She argues that, inasmuch as the premiums for the disability insurance policy had been paid with community funds, the proceeds belong to the community.
The determination that such a policy has been acquired with community monies, however, does not necessarily classify the disability benefits as community. Brant v. Brant, 26,508 (La.App.2d Cir. 01/25/95), 649 So.2d 111. Indeed, unlike retirement income, disability payments present special problems. Johnson v. Johnson, 582 So.2d 926 (La.App. 2d Cir.1991). Proper designation requires careful examination to determine if such disability payments represent deferred compensation in the nature of retirement or pension income. Brant, supra. If so, the proceeds should be categorized as community to the extent they are attributable to years of service performed during the existence of the community. Johnson, supra.
The policy in the instant case clearly does not accord deferred compensation or retirement. Instead, its benefits are payable only for total physical disability. In fact, the *619 insurer has acknowledged that Dr. Chance's medical condition renders him totally disabled under the policy, and, thus, eligible for benefits until such time as his health improves. Cf. Brant, supra; Mercer v. Mercer, 95-1257 (La.App. 3d Cir. 04/03/96), 671 So.2d 937.
Disability payments that do not qualify as deferred income, such as those sub judice, should be characterized in accordance with the approach utilized for tort damages and worker's compensation benefits. Thus, concerning injuries sustained by a spouse during the existence of the community, that portion of any award designed to compensate for loss of earnings would be community property during the existence of the marital regime, but separate property following termination. Id. In the present matter, then, the trial court did not err in treating the disability insurance benefits payable to Dr. Chance subsequent to the community termination as his separate property.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment below is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] See Preis v. Preis, 94-442 (La.App. 3d Cir. 11/02/94), 649 So.2d 593; Meyer v. Meyer, 553 So.2d 943 (La.App. 4th Cir.1989); Gachez, supra.
[2] Disapproved on other grounds in Barrera v. Ciolino, 92-2844 (La. 05/05/94), 636 So.2d 218.
[3] The purchase occurred about a year and a half before the termination of the community, and the sale transpired six months after the termination date.
[4] Bayer based his appraisal on the contractual agreement of the physician shareholders concerning valuations when a practitioner withdraws from the practice.