715 So.2d 632 (1998)
Bonnie Carol FRY, et al., Plaintiffs-Appellants,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees.
Edward FRY, Plaintiff-Appellant,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees.
Judy Carolyn ELDER, Plaintiff-Appellant,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees. (Two Cases)
Rodney Dewayne GRAY, et ux., Plaintiffs-Appellants,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees. (Two Cases)
Bobby Ray STULTZ, Plaintiff-Appellant,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees. (Two Cases)
Jack Dan McGUFFIE, et ux., Plaintiffs-Appellants,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees.
Barbara P. McGUFFIE, Plaintiff-Appellant,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees.
Nos. 30540-CA to 30549-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
*633 Troy E. Bain, Shreveport, A.J. Gregory, Jr., Natchitoches, Rountree, Cox, Guin & Achee by Dale G. Cox, Shreveport, J. Philip Goode, Jr., Bossier City, for Plaintiffs-Appellants.
Richard Ieyoub, Attorney General, Lunn, Irion, Johnson, Salley & Carlisle by James A. Mijalis, Special Assistant Attorney General, for Defendant-Appellee State.
Wilkinson, Carmody & Gilliam by Arthur R. Carmody, Jr., Shreveport, for Defendant-Appellee Southern Pacific Trans. Co.
*634 Before MARVIN, C.J., and HIGHTOWER and STEWART, JJ.
HIGHTOWER, Judge.
Plaintiffs appeal the rejection of personal injury and wrongful death claims arising from an automobile-train collision. Concluding, like the trial court, that the railroad crossing did not present an unreasonable risk of harm, we affirm.

Facts and Procedural History
On the afternoon of July 11, 1990, Barbara McGuffie and several of her relatives began a trip from her home in Keithville to Hamel's Amusement Park in Shreveport. Four adults sat in the captain chairs of the 1988 GMC van, while seven children of diverse ages squeezed onto the rear bench seat and elsewhere in the automobile. As they traveled Stagecoach Road, the only route out of McGuffie's residential subdivision, the driver failed to hear the whistle of an approaching train over the noise of the air conditioner, radio, and excited children. Aware nonetheless of the upcoming railroad crossing, McGuffie slowed her van and focused her attention to the north (her right), where some vegetation partially obscured her vision. She neglected to look south, however, and did not see the train advancing from that direction.
Gilford T. Stovall, the engineer of the eighteen and one-half foot tall train, began sounding the requisite horn blast sequence even before he passed the whistle board located one-quarter mile from the railroad intersection with Stagecoach Road. Surveying the upcoming junction, he observed the westbound McGuffie vehicle somewhere near Janell Roada street running parallel with and approximately seventy-five feet east of the railroad tracksand noticed that the driver was looking to the north. Although he saw her slowing as she approached the crossing and it appeared that she would stop at any moment, the van driver continued moving forward despite a stop sign, a crossbuck,[1] and pavement markers, all devices intended to alert a motorist to the possibility of a train on the tracks. When Stovall realized that McGuffie was not going to stop, he immediately applied the emergency brakes, exerting maximum stopping power to the locomotive and rail cars. McGuffie still failed to look south to see the train.
The force of the resulting collision caused the van to spin in the air before coming to rest on its side approximately fifty feet into the northeast quadrant of the intersection. Sandra Stultz and her two children, along with Amy Gray, died as a result of injuries sustained in the accident. The remaining occupants of the vehicle (Judy Elder, Russell Bobo, Bonnie Fry, Cindy Fry, Steven Gray, Josh McGuffie, and Barbara McGuffie) received injuries that varied in severity. Plaintiffs[2] filed suit against several defendants, but proceeded to trial against only Southern Pacific Transportation Company and the State of Louisiana, through the Department of Transportation and Development ("DOTD"). As the theory of liability proposed to the judge, the jury,[3] and this court on appeal, plaintiffs contend that the vegetation growing near the northeast quadrant of the intersection obscured a motorist's view and constituted an unreasonably dangerous condition. They argue that the two remaining defendants knew the risk, yet failed to erect electronic signals and gates at the crossing in a timely manner.[4] The triers-of-fact *635 rejected these arguments and, instead, concluded that McGuffie's negligence alone caused the accident. These appeals ensued.

Discussion
A railroad crossing is considered unusually dangerous when the view of the motorist is so obstructed as to require that he place himself in a position of peril precariously near the tracks before he has a view of the oncoming train. Rivere v. Union Pacific Railroad Co., 93 1132 (La.App. 1st Cir. 10/07/94), 647 So.2d 1140, writ denied, 95-0292 (La.3/24/95), 651 So.2d 295. In such circumstances, the railroad company will be held liable unless it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warning devices. Id. Furthermore, a governing authority with jurisdiction over a particular roadway has a legal duty to make that highway reasonably safe for travel.[5]Id. To establish liability on the part of the governing body, however, a plaintiff must prove that the roadway was unreasonably dangerous, that the state had knowledge of the condition yet failed to exercise a reasonable chance to remedy that condition, and that the unreasonably dangerous condition caused the accident. Dowden v. Carr, 27,995 (La.App.2d Cir. 2/28/96), 669 So.2d 707.
Of course, the lack of an unreasonably dangerous condition implies the absence of a duty on the part of a defendant. Townsend v. Westinghouse Elevator Corp., 25,966 (La.App.2d Cir. 8/17/94), 641 So.2d 1022, writ denied, 94-2371 (La.11/29/94), 646 So.2d 403. And, the mere happening of an accident does not engender a presumption that defects are present. Spott v. Otis Elevator, 601 So.2d 1355 (La.1992); Townsend, supra.
Thus, the threshold issue becomes whether the Southern Pacific/Stagecoach Road crossing is unreasonably dangerous. In this regard, plaintiffs presented several witnesses, all friends and neighbors of McGuffie, who testified about problems they experienced with the vegetation in the northeast quadrant of the intersection. They indicated that, in order for a westbound motorist to have a clear view to the north, he would have to ease his automobile up on top of the tracks or, at least, uncomfortably close to the rails. So too, plaintiffs' expert, Dr. William Berg, opined that inadequate sight distance existed to the north, and that it would not be unexpected for a driver to focus his attention in that direction for longer than usual.
On the other hand, defendant presented photographic evidence taken from perspectives similar to those of westbound motorists and showing a clear line of sight in either direction. Testimony from sheriff's investigators and defendants' expert accident reconstructionist[6] corroborated the accuracy of these photos. During their accident investigation, deputies with the Caddo Parish Sheriff's Office looked for and found no view impediments in any of the quadrants of the intersection. Also, expert testimony disclosed that, at the location of the crossbuck sign, twenty-eight feet from the rails, and as far back as thirty-five feet, the foliage near Stagecoach Road presented no obstruction when looking to the north. Even plaintiffs' expert agreed that, shortly before reaching the crossbuck, a driver would be at the far western edge of the vegetation and could see a considerable distance up the track to the north. Most importantly, it is undisputed that a westbound driver's view to the south the direction from which the train was approachingis absolutely unimpeded at all points.
*636 Neither do the warning devices, or the alleged lack thereof, at this particular intersection, create any unreasonable risk of harm. At a point 236 feet before reaching the railroad tracks, a motorist traveling west on Stagecoach Road encounters a yellow circular advance-warning sign. That device, according to Dr. Fogarty, is intended to inform the driver that a railroad crossing lies ahead and that he should proceed accordingly. Next, at forty-two feet from the intersection, a stop sign is confronted. This device, as explained by the expert, instructs a driver to stop at a point where he will have a clear line of sight for safely traversing the intersection, not necessarily directly alongside the sign itself. Then, at twenty-eight feet, the statutory crossbuck advises motorists to yield to any trains. (Regarding a motorist's duty at stop and yield signs, cf. La. R.S. 32:123, 32:169B, 32:175.) Finally, immediately adjacent to the tracks, a white pavement marker provides an extra indication of the upcoming crossing.
These devices, according to Dr. Fogarty, exceed the safety requirements specified for railroad crossings in the Manual of Uniform Traffic Control Devices. Indeed, in his opinion, this intersection would be reasonably safe even without the stop sign and the pavement marker. Evidence showing that warning devices comply with the appropriate design standards, e.g., the Manual of Uniform Traffic Control Devices, constitutes prima facie proof of the adequacy of the devices, as well as the absence of negligence on the road authority's part. La. R.S. 32:235(E); Reichert v. State, DOTD, 94-1419 (La.05/20/97), 694 So.2d 193; Donavan v. Jones, 26,883 (La.App.2d Cir. 06/21/95), 658 So.2d 755, writs denied, 95-1786, 95-1891 (La.11/03/95), 661 So.2d 1379. Plaintiffs failed to rebut this presumption, or otherwise demonstrate the need for electronic signals and gates, in the present case.
In determining that the accident resulted solely from Barbara McGuffie's inattentiveness and disregard for the regulatory signs, the fact-triers apparently relied upon Dr. Fogarty's expert opinion (along with testimony of fact witnesses) and rejected the conclusions of Dr. Berg. Where expert testimony differs, it is the trier of fact who must determine the more credible evidence, and factual findings based upon that determination may not be overturned unless manifest error appears in the record. Chance v. Chance, 29,591 (La.App.2d Cir 5/07/97), 694 So.2d 613; Hebert v. Southwest Louisiana Elec. Membership Corp., 95-405 (La.App. 3d Cir. 12/27/95), 667 So.2d 1148, writ denied, 96-0798 (La.5/17/96), 673 So.2d 608.
The fact-trier is entitled to assess the credibility and accept the opinion of an expert just as with other witnesses, unless the stated reasons of the expert are patently unsound. Hickman v. Exide, Inc., 28,495 (La.App.2d Cir. 08/21/96), 679 So.2d 527. Of course, the effect and weight to be given such expert testimony depends upon the underlying facts and rests within the broad discretion vested in the trier-of-fact. Chance, supra; Adams v. Commercial Nat'l Bank, 27,360 (La.App.2d Cir. 09/27/95), 661 So.2d 636. Moreover, in accepting the opinion of one expert and rejecting that of another, the trial court can virtually never be manifestly erroneous. Chance, supra; Hebert, supra. Our review discloses that the determination of the trial judge and jury in the present case is not clearly wrong, but instead amply supported.
Nor are we impressed by plaintiffs' complaints about the testimony from the investigating deputies and portions of Dr. Fogarty's disclosures. Specifically, appellants contend that the trial court erroneously allowed the officers to give expert opinions regarding the point of impact between the train and the van. It is also maintained that, until shortly before trial, plaintiffs had not been informed that the accident reconstructionist had visited the accident scene. This latter argument likewise concerned the point of impact, viz., how Dr. Fogarty made his determination in that respect. Yet, with the evidence showing a clear and unobstructed view to the north from a position thirty feet before a driver reaches the tracks, the physical location of the point of impact becomes moot. As found in the trial court, McGuffie's inattentiveness alone caused the accident.
*637 Furthermore, the documents and correspondence concerning the upgrade process, e.g., the report of the On-Site Inspection Checklist and Recommendations, should have been generally excluded from evidence under 23 U.S.C. § 409[7] and defendants' pre-trial motions in limine.
Congress enacted 23 U.S.C. § 409 to preclude from discovery and eventual admission into evidence any report, survey, schedule, list, or data collected or compiled for developing any highway safety construction improvement project which may be or has been implemented or supported with Federal-aid funds. As noted by our supreme court, this provision serves to "`[f]oster the free flow of safety-related information by precluding the possibility that such information later would be admissible in civil suits. The interest to be served by such legislation is to obtain information with regard to the safety of roadways free from the fear of future tort actions.'" Reichert, 694 So.2d at 197 quoting Perkins v. Ohio Dept. of Transp., 65 Ohio App.3d 487, 584 N.E.2d 794 (1989), cause dismissed, 57 Ohio St.3d 612, 566 N.E.2d 673, reh'g denied, 58 Ohio St.3d 711, 570 N.E.2d 281 (1991).
In an earlier decision, Wiedeman v. Dixie Electric Membership Corp., 627 So.2d 170 (La.1993), the supreme court held that items considered inadmissible and undiscoverable under this provision include: surveys to identify hazardous railroad crossings and improve them; applications for federal assistance in replacing or rehabilitating highway bridges; studies assigning priorities and schedules of projects for highway improvement; and other compilations made for developing highway safety construction projects which would utilize Federal-aid funds. Subsequently, a 1995 amendment to 23 U.S.C. § 409[8] clarified that the list of exhibits to be excluded should also encompass accident reports, traffic counts, and other raw data collected. Reichert, supra.
The jurisprudence additionally indicates that correspondence on such topics, even from non-governmental sources, are neither discoverable nor admissible. See, e.g., Miller v. Bailey, 621 So.2d 1174 (La. App. 3d Cir.), writ denied, 629 So.2d 358 (La.1993); Rodenbeck v. Norfolk & Western Railway Co., 982 F.Supp. 620 (N.D.Ind. 1997). Nor does 23 U.S.C. § 409 apply only to state agencies; for instances where railroads have successfully invoked protection, see Rodenbeck, supra; Sawyer v. Illinois Central Gulf Railroad, 606 So.2d 1069 (Miss. 1992); Claspill v. Missouri Pacific Railroad Co., 793 S.W.2d 139 (Mo.), cert. denied, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990). Finally, we also note that § 409 precludes expert testimony based upon the contents of inadmissible documents. Stephens v. Town of Jonesboro, 25,715 (La.App.2d Cir. 8/19/94), 642 So.2d 274, writs denied, 94-2351, 94-2557, 94-2577 (La.11/29/94), 646 So.2d 400.
Applying these precepts here, we conclude that the lower court erred in allowing the on-site inspection report into evidence. This exhibit, like much of the copious documentation presented by plaintiffs regarding the timeliness of the upgrade process, contains a preliminary survey of the Southern Pacific/Stagecoach Road crossing, along with recommendations and impressions rendered in that inspection. As noted by our supreme *638 court, § 409's exclusion of such information protects the public by ensuring that safety measures are routinely explored by administrators. Reichert, supra.

Conclusion
Accordingly, for the foregoing reasons, the judgment below is affirmed at plaintiffs' costs.
AFFIRMED.
NOTES
[1] La. R.S. 32:169 provides in part: "Any person, firm, or corporation controlling any railroad track which intersects a public road or street at grade crossings, except those contained in the maintenance system of the office of highways, shall erect and maintain a `Railroad Cross Buck' sign ... which shall be white with the `Railroad Crossing' in black letters. The sign shall be reflectorized.... This sign shall be erected on the right hand side of the roadway of such approach to the crossing not more than fifty feet nor less than fifteen feet from the nearest rail and not less than six feet or more than twelve feet from the edge of the roadway."
[2] The plaintiffs in this matter are Judy Elder, Russell Bobo, Bonnie and Edward Fry, Cindy Fry, Bobby Stultz, Rodney and Evelyn Gray, and Barbara and Jack McGuffie.
[3] The claims against the state governmental body were addressed by the judge, while the jury decided as to Southern Pacific.
[4] Much of the trial testimony concerned the amount of time needed for the joint effort of DOTD and Southern Pacific to upgrade the railroad crossing. We do not directly reach the contention, however, that alleged excessive delays in this procedure constituted negligence on the part of both defendants.
[5] Stagecoach Road is a parish road maintained by the Caddo Parish governing authority. Plaintiffs contend, however, that DOTD assumed a duty with regard to this roadway by selecting the crossing in question for an upgrade.
[6] Dr. William J. Fogarty, an expert in accident reconstruction and highway-railroad crossing design, termed plaintiffs' photographs misleading based on the vantage points from which the pictures had been taken. Additionally, he revealed that the vegetation depicted therein would cause only a minimal impediment to view and only for five-sevenths of a second for a motorist traveling ten miles per hour. Interestingly, the video prepared by plaintiff witness June Morgan on the day following the accident shows a clear view to the north at a safe distance from the railroad tracks.
[7] That provision states, that "[n]otwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data."
[8] This amendment also applies retroactively. Reichert, supra. Congress explained that "[i]t is intended that raw data compiled prior to being made part of any formal or bound report shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such data." Act of November 18, 1995, Pub.L. No. 104-59, 1995 U.S.C.C.A.N. (109 Stat.) 568.