727 So.2d 514 (1998)
Donna M. Zappi FOX, M.D.
v.
Christopher David FOX, M.D.
No. 97 CA 1914.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
Rehearing Denied December 28, 1998.
*515 Mary Grace Knapp, Covington, for Plaintiff-Appellant Donna M. Zappi Fox, M.D.
Christopher David Fox, M.D., Slidell, In Proper Person.
Charles N. Branton, Former Trial Attorney, Slidell, for Defendant-Appellee Christopher David Fox, M.D.
Ernest S. Anderson, Former Appellate Attorney, Slidell, for Defendant-Appellee Christopher David Fox, M.D.
Before FITZSIMMONS and GUIDRY, JJ., and CHIASSON,[1] J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
The community of acquets and gains formerly existing between Dr. Christopher D. Fox and Dr. Donna Z. Fox terminated on March 22, 1994. Pursuant to partition proceedings instituted by the wife, the trial court rendered judgment on March 5, 1997, allocating the community of assets and liabilities between the parties and ordering a cash equalization payment to the wife.
It is from this judgment that the wife now appeals, complaining that the trial court erred in valuing the medical practice of her husband at $43,283.00 at the time of the termination of the community.

*516 DISCUSSION
After considering the testimony of the experts presented by each party, the trial court accepted the valuation established by the husband's expert, Ms. Melo Nix. The wife contends the valuation of her expert, Mr. Dale Oser, should have been accepted.
Where expert testimony differs, it is the trier of fact who must determine the more credible evidence, and factual findings based upon that determination may not be overturned unless manifest error appears in the record. The fact-trier is entitled to assess the credibility and accept the opinion of an expert just as with other witnesses, unless the stated reasons of the expert are patently unsound. Of course, the effect and weight to be given such expert testimony depends upon the underlying facts and rests within the broad discretion of the trial judge. Moreover, in deciding to accept the opinion of one expert and reject the opinion of another, a trial court can virtually never be manifestly erroneous. (Citations omitted).
Chance v. Chance, 29,591 p. 3 (La.App. 3rd Cir.5/7/97); 694 So.2d 613, 617.
The primary dispute in the valuation of the husband's corporate medical practice surrounds the amount of accounts receivable and the corresponding amounts collectible.
In valuing a medical practice, as one would a law practice, the cash basis must be converted to an accrual basis to uncover fees and expenses not reflected on an income statement. See Skoloff, The Value of a Law Practice in a Divorce, 73 ABA Journal (March 15, 1987), 38. In determining accounts receivable and work in progress, care must be taken to include only collectible items, and bad debts should be discounted. Id. at 40.
Barrow v. Barrow, 27,714, pp. 8-9 (La.App. 2nd Cir.2/28/96), 669 So.2d 622, 627, writs denied, 96-1057, 96-1072 (La.6/21/96), 675 So.2d 1080. Courts in this state have previously approved the use of average collection ratios in valuing accounts receivable. Barrow v. Barrow, 669 So.2d at 628; Chance v. Chance, 29,591, p. 5 (La.App. 2nd Cir.5/7/97), 694 So.2d 613, 618.
The husband's expert, Ms. Nix, determined that the value of the accounts receivable was $38,857.00. Ms. Nix did not determine the amount of accounts receivable that existed as of the date the community was terminated. Instead, Ms. Nix was provided with the total amount collected by the corporation between March 22, 1994, and September of 1994, which was $71,427.58. This information was provided to Ms. Nix by Edward Songy. Ms. Nix then discounted this amount for the personal taxes that would have to be paid by the husband. According to Ms. Nix, she did no independent investigation to determine the accuracy of the figures provided to her by Mr. Songy. Ms. Nix testified that if Mr. Songy had not provided her with what the collectibles were, she would have first determined the accounts receivable on the books. Ms. Nix stated that on March 22, 1994, if she had an accounts receivable report, she would have to estimate, based on prior history, what she thought would or could be collected. Because she was provided with Mr. Songy's figure as to what was actually collected, there was no need to estimate the collectibles.
Mr. Songy wrote computer software programs designed to run the business aspect of a medical practice. The programs establish accounts receivable, amounts collected and break down the source of the collections by private pay, Medicare, Medicaid, etc. Mr. Songy testified that he was contacted by the husband to determine the amount of money collected by the corporation on services rendered prior to March 22, 1994. Mr. Songy then wrote a program which was designed to calculate the amount of money collected by the practice on services rendered on or before March 22, 1994. This program did not account for checks returned for insufficient funds or refunds so the program would overstate the amounts collected.
In contrast, Mr. Oser, the wife's expert, placed a net value of $219,151.93 on the accounts receivable. In determining this amount, Mr. Oser reviewed all of the accounts receivable for the corporation from 1992, 1993 and January of 1994 through March 22, 1994. Mr. Oser calculated that *517 the total accounts receivable were $453,428.41. Mr. Oser stated that he then divided the $71,427.58 figure that Mr. Songy had determined was collected by the corporation by the accounts receivables figure which Mr. Oser had determined to be $453,428.41. This equaled 15.8% collected from the accounts receivable. Mr. Oser then did an analysis of the corporation's receivables for 1993. The receivables for 1992 were not reviewed because the corporation was started that year. In 1993, Mr. Oser determined that the corporation collected 79% of their charges and also wrote off or credited $232,000.00 (23.34%). Because Mr. Oser had only three months to compute in 1994, he used the total charges for those three months and annualized them to come up with an annualized total to compare to surveys of orthopedic practices. Mr. Oser estimated that the annualized charges for 1994 were $1,031,000.00. Mr. Oser stated that, according to the Medical Group Management Association Survey, the average charges amounted to $1,016,000.00. Mr. Oser then compared the credits which in 1993 equaled -$232,000.00 and in 1994, annualized, equaled -$398,000.00. Because the corporation's collections had been pretty consistent with the national average, Mr. Oser opined that the trends of the corporation's 1993 and 1994 documents indicated that the percentage of his outstanding accounts receivable that the corporation would have collected would be approximately 72-79%. Mr. Oser admitted that he had not been able to verify this trend. Mr. Oser testified that the trend in the corporation's collection should continue; it may decrease a little but would stay above 70%. Mr. Oser also noted that in March of 1994, the corporation wrote off $41,746.50 of accounts receivable.
Mr. Oser reduced the figure of $453,428.43 by the amount of income tax that the husband would have to pay at 45.6% and arrived at $215,665.16 in accounts receivable.
After a review of the record before us, we find that the trial court's acceptance of Ms. Nix's valuation to be patently unsound and constituted manifest error. Without a review to confirm the bottom-line collection figure supplied by a party (in this case, Mr. Songy) aligned with the business owner, an owner could too easily manipulate the figures: under reporting, not making any effort to collect, or affording clients or patients unusually long pay back periods.
However, we note that in finding Ms. Nix's valuation to be more credible, the trial court pointed out that Mr. Oser's valuation of the accounts receivable was inflated because they included uncollectible charges. The trial court also noted that Mr. Oser's valuation of other assets of the corporation included equipment and movables which were not appraised by an expert, including X-ray equipment which was shown to be leased to the medical practice.
Thus, the evidence presented by both parties as to the valuation of the corporation is patently unsound. La. C.C.P. art. 2164 provides, in pertinent part, that "[t]he appellate court shall render any judgment which is just, legal, and proper under the record on appeal." The court of appeal may remand the case to the trial court for introduction of additional evidence to prevent a miscarriage of justice; such power is discretionary and depends upon the circumstances of the case. Huval Baking Company v. State, Worker's Compensation Second Injury Fund Board, 594 So.2d 1028, 1035 (La.App. 3rd Cir.1992); St. Pierre v. Hirschfeld, 569 So.2d 222, 226 (La.App. 1st Cir.1990).
In the instant case, we are unable to make a determination of the valuation of the husband's medical corporation based upon the record before us. Therefore, we find that the matter should be remanded to the trial court for an evidentiary hearing on this issue.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. The matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs of this appeal are to be assessed equally to Dr. Christopher Fox and Dr. Donna Fox.
REVERSED AND REMANDED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.