2DUPLANTIER, J., Pro Tem.
This is an appeal of a judgment by the trial court in a personal injury case arising out of a truck/train accident. Wayne Lindsay and the insurer of the vehicle he was driving at the time of the accident, Harco National Insurance Company, appeal the damages awarded by the trial court, contending the amount is so low that it is an abuse of the trial court’s discretion.
The State of Louisiana, through the Department of Transportation and Development (“DOTD”), also appeals the trial court’s assessment of 40% liability DOTD and 60% to Lindsay.
For the reasons stated herein, we reverse the judgment of the trial court regarding allocation of fault; thereby rendering the question of damages moot.
FACTS AND PROCEDURAL HISTORY
On June 4, 1991, Wayne Lindsay (“Wayne”) was injured when the 18-wheel logging truck he was driving was struck by a switch engine locomotive with trailing cars owned by The Kansas City Southern Railway Company (“KCS”) and being operated by Edward Wilkerson - (“Wilkerson”). The truck was owned by Wayne’s brother, Clanton Lindsay (“Clanton”) and was insured by Harco National Insurance Company (“Harco”).
As a result of the above described accident, Clanton filed a property damage suit against KCS and Wilkerson. KCS and Wilkerson reconvened against Clanton and third-partied Wayne and Harco. KCS sought property damages and damages for loss of use of the locomotive. Thereafter, Wayne reconvened against KCS and Wilkerson for his personal injuries. Harco also reconvened against KCS and Wilkerson seeking reimbursement for repair costs it paid under its collision policy on the truck in the amount of $17,051.03.
Thereafter, KCS voluntarily dismissed Harco from its third-party demand as Har-co provided only property damage coverage for the truck, not liability coverage. KCS amended its third-party demand to add Bituminous Casualty Corporation and Colonia Insurance Company, the liability insurers of the truck. Subsequently, KCS voluntarily dismissed Bituminous as its policy did not provide coverage for this accident. KCS then settled and resolved its claims against Clanton, Wayne and Co-lonia; hence those claims were dismissed.
Clanton, Wayne and Harco supplemented and amended their respective demands to add as party defendants the State of Louisiana, through the Department of Transportation and Development (“DOTD”) and the Parish of East Baton Rouge (“Parish”). Clanton, Wayne and Harco then settled Land resolved their claims against KCS, Wilkerson and the Parish; hence those claims were dismissed.
At the time of trial, the only claims remaining were Wayne’s and Harco’s respective claims against DOTD.
Prior to trial, the parties entered into a stipulation that Harco issued a policy of insurance to Clanton which was in full force and effect on June 4, 1991; and that as a result of the subject accident, Harco paid $15,117.70.
Following a trial on the merits on January 19, 1999, the trial court ruled in open court on February 9, 1999, finding that *978 DOTD was 40% bable for the accident and resulting damages incurred by Wayne, and that Wayne was 60% liable for the accident a resulting damages he incurred. The trial court awarded damages as follows:
Physical pain and suffering, past and future $ 50,000.00
Mental pain and suffering, past and future $ 25,000.00
Past medicals $ 31,724.11
Future medicals $ 10,000.00
Loss of enjoyment of life $ 15,000.00
TOTAL $131,724.11
The trial court awarded Hareo $15,117.70. Finally, the trial court apportioned costs in the same amounts as its assessment of liability, 40% to DOTD and 60% to Wayne. The judgment was subsequently signed on June 1,1999.
It is from this judgment that both Wayne and DOTD appeal, assigning as error the following:
Wayne
The trial court’s award of general damages was abusively low to Wayne Lindsay, who' sustained a herniated lumbar disc and underwent lumbar surgery, including a two-level lumbar fusion and a lumbar laminectomy.
DOTD
The trial court erred when it assessed 40% liabihty on the DOTD and only 60% on the Plaintiff driver, Wayne Lindsay.
LAW AND DISCUSSION

Standard of Review

An appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless it is clearly wrong. The two-tier test for reversal on appellate review consists of: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). A reviewing court must do more |4than simply review the record for evidence which supports or controverts the trial court’s findings. It must review the record in its entirety to determine whether the trial court’s findings were clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993).
We note that at the conclusion of the trial of this matter, the trial court set a ruling date of February 9, 1999 at 10:00 A.M. Unfortunately, the record does not include a transcript of said ruling date proceedings; hence, we have no way of knowing the reasoning of the trial court, except what we are able to infer from the testimony presented at trial. Additionally, we have no way of ascertaining whether the trial court’s conclusions and reasons therefor are reasonable based upon the record of these proceedings.

Allocation of Fault

Because our decision regarding allocation of fault will correlate directly with the specification of error dealing with damages, we will address allocation of fault first.
DOTD argues that the trial court erred when it assessed 40% liability on' the DOTD and only 60% on Wayne.
The evidence at trial established that on the date of the subject accident, Wayne turned, as he had 25-30 times immediately preceding this accident, right from U.S. Highway 61 onto Mount Pleasant Road; thereby showing that Wayne was able to negotiate this particular right hand turning maneuver without incident on each of those occasions, as well as on numerous trips which occurred after this accident. The evidence further shows that on each of those occasions, both before and *979 after this accident occurred, Wayne was operating the same or a similar logging truck. Not once at trial did he testify that he encountered any mishap or problem in negotiating the right hand turning maneuver.
The evidence submitted further indicates that Wayne admitted that on the date of the accident he was able to negotiate the turning maneuver from the right hand lane onto Mount Pleasant Road without incident. He admitted being able to bring his truck back within the westbound lane of Mount Pleasant Road before reaching the railroad crossing, and also admitted that he did not stop at the crossing but actually slowly crossed the tracks going 2 to 3 miles per hour. Finally, Wayne admitted that the train struck his trailer after his tractor had already negotiated the tracks.
Wayne testified that there were no sight obstructions which would have prevented him from |fiobserving a northbound train approaching the subject railroad crossing. He also admitted that he had no visual or hearing impairment which would have prevented him from seeing or hearing the switch engine as it approached the railroad crossing.
The crewmen manning the Kansas City Southern switch engine each confirmed that the engine was traveling no more than 8 miles per hour when the emergency brakes were applied. The engineer, Wilkerson, testified that the headlight was illuminated and that one of the first functions which he performs when he begins his daily tour of duty is to be certain that the headlight is operational and is, in fact, illuminated.
The crewmen’s testimony concerning the sounding of the whistle prior to reaching the Mount Pleasant Road crossing is corroborated by the testimony of State Trooper Leonard Harris as well as by Sheila Alleman (“Alleman”). At the time of this accident, Trooper Harris was issuing a citation to Alleman just north of the intersection at issued. Both testified to hearing the train whistle several times before the continuous blast just prior to the impact and also observed that the headlight on the switch engine was illuminated. Notwithstanding, the evidence shows that Wayne continued moving forward despite a cross buck and pavement markers; both devices intended to alert a motorist to the possibility to a train on the tracks.
DOTD contends that Wayne clearly violated LSA-R.S. 32:175 which specifically states:
Vehicles must yield at railroad grade crossings; exceptions
A. The driver or operator of a vehicle approaching a rail-highway grade crossing identified by the presence of a railroad cross buck sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the crosswalk on the near side of the intersection or, in the event there is no cross walk, at a clearly marked stop line, or if none, then at the point nearest the intersecting rail of such railroad where the driver or operator has a clear view of any approaching train. The driver or operator shall listen and look in both directions along such track for any approaching train and for signals indicating the approach of a train. Having slowed or stopped in this manner, the driver or operator shall yield the right of way to any approaching train and then shall proceed only upon exercising due care and upon being sure that it is safe to proceed.
B. The driver or operator of a vehicle need not yield at any such rail-highway grade crossing where a police officer or traffic-control signal directs traffic to proceed.
*980 C. The provisions of this Section do not relieve drivers or operators of the responsibility to comply with the provisions of R.S. 32:171 and 32:173.
In Glisson v. Missouri Pacific Railroad Co., 246 La. 470, 165 So.2d 289 (La.1964), the Supreme Court held:
The general rule of law is that a motorist approaching a railroad crossing must use | (¿lis senses of sight and hearing for possible oncoming trains, before traversing the crossing. [Citations omitted]. A motorist negotiating a railroad crossing is burdened with the responsibility of seeing and hearing that which he could have seen and heard, and he is presumed in law to have seen and heard what he could have seen and heard. [Citation omitted]. If the motorist’s view of the right of way is obstructed, he must exercise a higher degree of caution. [Citations omitted].
Glisson v. Missouri Pacific Railroad Co., 246 La. at 476, 165 So.2d at 291 quoting Glisson v. Missouri Pacific Railroad Co., 158 So.2d 875, 878 (La.App. 3d Cir.1963).
If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen. Severson v. St. Catherine of Sienna Catholic Church, 97-1026 (La.App. 5th Cir.2/11/98), 707 So.2d 1026, 1030, writ denied 98-0653 (La.4/24/98), 717 So.2d 1178. Consequently, we find that Wayne failed to see the train on the track in close proximity to the Mount Pleasant Road crossing.
Jim Clary (“Clary”), an expert in the area of civil engineering and road design, testified that the intersection was designed and built in accordance with the standards that were in place in 1940 rather than the 1954 ASSHTO manual. It was also Clary’s testimony that he was unsure if there was any differences between the two sets of standards. Clary’s remedy for the alleged design defect is to redesign the turn out in the northwest quadrant to a 90° angle in order to eliminate the acute angle of the turn as it existed on the date of this accident.
It is undisputed that Mount Pleasant Road is a parish road and that DOTD does not have care or custody or control over it. Yet, Clary suggested that DOTD should have realigned the northwest quadrant and that this realignment would have more easily handled the 18-wheeler traffic to the industrial plant located at the end of Mount Pleasant Road. Clary did not dispute that the industrial plant did not even exist until some time in 1969, more than 12 years after the intersection was designed and built; and that when the turn-out was designed Mount Pleasant Road was a gravel roadway.
We find that Clary failed to establish how the alleged defects caused this accident, more specifically, how the existing curve and alleged uneven pavement on the edge of the shoulder/ditch area caused Wayne to proceed dangerously close to the engine of a clearly visible train, loudly sounding its whistle.
17DOTD cites Fry v. Southern Pacific Transp Co. 30540 to 30549 (La. App 2d Cir. 6/24/98), 715 So.2d 632, writ denied 98-1986 (La.10/30/98), 727 So.2d 1170, writ denied 98-2033 (La.10/30/98), 728 So.2d 387, a case factually similar to the instant case. In that case, the theory of liability proposed by the plaintiffs was that vegetation growing near the northeast quadrant of the intersection obscured a motorist’s view and constituted an unreasonably dangerous condition. It was undisputed that a westbound driver’s view to the south (the direction from which the train was ap *981 proaching) was absolutely unimpeded at all points.
The driver of the vehicle in the Fry case was traveling a route she was intimately familiar with and failed to hear the whistle of an approaching train over the noise of the air conditioner, radio and children seated in the back seat. She, nonetheless, was aware of an upcoming railroad crossing. She slowed her van and focused her attention to the north (her right), where some vegetation partially obscured her vision. She neglected to look south, however, and did not see the train advancing from that direction. At the trial of that matter, she presented the testimony of Dr. William Burg, who opined that an inadequate sight distance existed to the north and that it would not be unexpected for a driver to focus his attention in that direction for longer than usual.
In Fry, the Supreme Court determined that the accident resulted solely from the plaintiff driver’s inattentiveness and disregard for the regulatory signs. DOTD contends that Wayne, like the driver in Fry, failed to look in the direction of the train. We agree.
Dr. Joseph Blaschke (“Blaschke”), recognized by the court as an expert in the field of highway design, accident reconstruction and traffic engineering, testified that, in fact, most intersections are not designed to accommodate 18-wheeler traffic. Therefore, drivers of such vehicles routinely must encroach or infringe upon opposite lanes of travel to negotiate a right hand turn after first ascertaining it is safe to do so. This is not an unusual practice nor out of the ordinary, according to Blaschke.
In Burk v. Illinois Central Gulf Railroad Company, 529 So.2d 515 (La.App. 1st Cir.1988), writ denied, 532 So.2d 179 (La.1988), the plaintiffs testified that neither one of them saw or heard the train prior to the collision. They also testified that there was no sight obstruction. This Court found that:
[t]he jurisprudence provides that “negative testimony that a person did not hear a warning sign will not prevail over positive and credible testimony that such a | swarning signal was displayed.” quoting Lagrange v. Missouri Pacific Railroad Co., 503 So.2d 1158, 1159 (La.App. 3 Cir.1987).
Burk v. Illinois Central Gulf Railroad Company, 529 So.2d at 520.
DOTD argues that there can be no doubt that Wayne was familiar with the crossing. He had made turns routinely before and after the accident without incident. He knew that the crossing was there; no other vehicles were blocking or interfering with his ability to execute the turn maneuver; he was approaching the crossing at a slow rate of speed (2 to 3 miles per hour by his own testimony); he could have stopped his truck easily; and, he had negotiated many other turns and paid attention to his rear wheels without incident.
He acknowledged that it was not unusual to make right hand turns and encroach on other lanes of travel. If he had looked to his left he would have see the approaching train, yet he did not do so by his own admission. He admitted that the train has the right of way and that it is his responsibility to yield.
DOTD contends that according to the evidence submitted at trial as well as implied by the testimony of Wayne himself, Wayne’s failure to yield to the train was the sole cause of this accident. We agree and find that the trial court committed manifest error in assessing any fault whatsoever to DOTD. We find from the record that a reasonable factual basis does not exist for the finding of the trial court.

*982
Damages

Because we find that the sole cause of the accident at issue in this matter was the action and/or inaction of the plaintiff, we reverse the award of damages by the trial court.
DECREE
For the foregoing reasons, we reverse the trial court’s assessments of fault and award of damages and allocate 100% of the fault to the plaintiff. Accordingly, the plaintiff’s claims against DOTD are dismissed with prejudice. All costs associated with this appeal are assessed to the plaintiff.
REVERSED AND RENDERED.