| iMARVIN, Chief Judge.
In this wrongful death action arising out of a railroad crossing accident, the widow and children of the decedent auto-driver appeal a summary judgment granted in favor of the Ouachita Parish Police Jury and a partial summary judgment granted in favor of Mid-*970South Railroad Corporation and its employees named as co-defendants.
On this record, we reverse these summary judgments and remand with leave being granted to the litigants to again seek summary judgments that are properly supported. La. C.C.P. arts. 966, 967.
FACTS
The accident occurred at U.S. DOT Crossing No. 302-527-S on Golson Road east of Calhoun in Ouachita Parish about 3:00 p.m. on December 19, 1989. The decedent, Charles Gaynor Jarvis, who was driving southerly in his 1984 Mazda automobile, was pronounced dead at the scene after the accident. The Mid-South train was proceeding easterly.
Decedent’s widow and children alleged that Ouachita Parish failed to post an appropriate speed limit and a stop sign at the railroad crossing. They alleged that Mid-South and its employees failed in several respects: Lookout, warning whistle and bell, and excessive speed. Ouachita Parish cross-claimed against Mid-South and its employees seeking indemnification and contribution.
The parish moved for summary judgment, while alternatively moving in limine, based on federal law pre-emption, to exclude evidence regarding restricted sight distance or the adequacy of warning devices. The parish supported its motions with an affidavit of W.C. Shrewsberry, a safety engineer of the Louisiana DOTD, who oversees the Federal Railroad Safety Program and its implementation in Louisiana, and with excerpts from the deposition and report of John Glennon, a | ¿railroad crossing safety expert hired by plaintiffs. Mid-South adopted this support of its motion for partial summary judgment and motion in limine.
In a later filed supplemental motion for summary judgment, the parish effectively asserted plaintiffs had no cause of action because the parish was not alleged to have had notice of any vice or defect at the crossing, as required by La. R.S. 9:2800, and the parish is immune to liability. La. R.S. 9:2798.1. The parish claimed the statutory presumption of La. R.S. 32:235 that it had fulfilled any duty owed to plaintiffs, and asserted that plaintiffs cannot meet them burden of proving causation without showing that a lower speed limit on Golson Road would have prevented the accident.
In opposition to defendants’ motions, plaintiffs objected to consideration of the grounds raised in the parish’s supplemental motion that was filed less than ten days before the date of the hearing of the earlier motions for summary judgment.
At the scheduled hearing, held September 11, 1997, the trial court ruled in favor of all defendants on the preemption issue, granting the summary judgments as prayed for. The parish’s summary judgment was signed September 23,1997. The partial summary judgment in favor of Mid-South and its employees was signed October 9,1997.
DISCUSSION
Plaintiffs argue that the affidavit of Shrewsberry is insufficient to prove that there was no issue of material fact. They secondly assert that the trial court legally erred in ruling that federal law preempts state tort law regarding the placement of signs along Golson Road approaching the railroad crossing.
When federal funds have participated in the installation of warning devices at such a crossing, state tort claims challenging the adequacy of signalization are preempted by the Federal Rail Safety Act. CSX Transportation, Inc. v. |3 Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); Hester v. CSX Transp., Inc., 61 F.3d 382 (5th Cir.1995), cert. denied. Thus, the issue is posed as to whether federal funds were used in the installation of warning devices at the Golson Road crossing. Hester, supra. As subsequently indicated, however, 23 U.S.C. § 409 excludes certain information and evidence from discovery or admission. Fry v. Southern Pacific Transportation Co., 30,540 (La.App. 2d Cir.6/24/98), 715 So.2d 632.
Shrewsberry’s affidavit states his qualifications and employment with La. DOTD as Rail/Highway Safety Engineer who supervises the Railroad Unit within DOTD’s Maintenance Division. His responsibilities include *971overseeing administration of the Federal Railroad Safety Program, distribution of federal funds available for railroad crossing upgrades or safety improvements, upkeep of the National Railroad Inventory Database, and agreements for DOTD construction projects for railroad grade crossings. His affidavit states in part:
Appearer has reviewed DOTD records regarding state Project No. 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. Project No. 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 used federal funds to provide railroad crossing signs, including Railroad Advance Warning Signs and/or Railroad Crossbuck Signs, as needed, at railroad grade crossings in Ouachita Parish, Louisiana.
Railroad Crossing No. 302-527-S, which is located on Golson Road in Ouachita Parish, Louisiana, was included in Project No. 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.
Federal funds were utilized in the installation or placement of railroad crossing signs at Railroad Crossing No. 302-527-S.
Representatives of the Federal Highway Administration (“FWHA”) and the Louisiana DOTD made a final inspection of Project No. 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, and the project was accepted as complete.
Italics supplied.
Plaintiffs contend that Shrewsberry’s affidavit is insufficient since it negates that it is based upon personal knowledge as required by La. C.C.P. art. 967.
l4Art. 967 also requires that “[sjworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.” . Shrewsberry states he “reviewed” La. DOTD records and concludes that federal funds were used to upgrade the Golson Road crossing. He does not attach to his affidavit the DOTD records he reviewed. See Powers v. Tucker, 29,190 (La.App. 2d Cir.2/26/97), 690 So.2d 922, precluding consideration of an affidavit of an expert who reviewed a plaintiffs medical records without those records being attached to the affidavit.
Plaintiffs also attached Shrewsberry’s deposition to their opposition to the parish’s motion for summary judgment. The parish contends that any alleged insufficiency in Shrewsberry’s affidavit caused by the failure to attach the referenced documents to his affidavit is cured by his deposition. The parish also insists the hearing on the motion for summary judgment was continued in order to permit this deposition. A joint motion to continue was filed on August 11, 1997 to permit completion of discovery. The deposition was taken on August 29,1997.
Shrewsberry was questioned at the deposition about his job duties .with DOTD. Shrewsberry responded that he is the main or supervising person with DOTD who deals with lawsuits involving rail-highway crossings. His job duties include managing the Federal Railroad Safety Program for administration by DOTD, the National Inventory Database and the Maintenance Division Railroad Unit. The Database is used to distribute federal funds, while the Maintenance Unit coordinates and gets agreements for DOTD construction projects that involve railroads such as improving crossings.
Shrewsberry commented that he is familiar with Project No. 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, but did not know its exact completion date. He is also familiar with Crossing No. 302-527-S as far as the Database and DOTD’s information on the crossing. He | .^explained that when making his affidavit, he reviewed information which counsel for the parish had obtained by researching the microfilm project records listed in DOTD’s general files and compared this with Maintenance Division records, which are different. Shrewsberry said his affidavit was based on his knowledge of Maintenance Division records and the information ' gathered by the parish’s counsel, Sterritt. In regards to that information, Shrewsberry said he believes that Sterritt had information concerning the federal DOT numbers and inspection reports for this project. The records Sterritt researched would show specifically what was done to “upgrade” the crossing. The Maintenance Division records apparently also contain reports and other data compiled from the National Inventory Database.
Shrewsberry stated that it was his recollection that Project No. 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 provided funds for the placement of advance warning signs and cross-buck signs at the Golson *972Road crossing. But when questioned about the source of his affidavit statement that federal funds were used at the crossing, he answered that the source is correspondence with the Federal Highway Administration (“FWHA”) in the Maintenance Division Railroad Unit’s records containing references to the Federal Railway Safety Act, federal funds and FWHA review of the project.
When asked if he could testify on his own knowledge that the Golson Road crossing was upgraded, all Shrewsberry could say was that this crossing was upgraded with federal funds according to the documents presented to him. Asked by Sterritt if federal funds were utilized to place signs at this crossing, he answered yes. Finally, Shrewsberry said that while he would need to look at records to determine what signs were installed at the crossing or the amount of federal funds used there, he does know that federal funds were used to put up signs at the crossing.
leShrewsberry was served with a subpoena duces tecum directing him to produce at his deposition all of the DOTD records pertaining to Project No. 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 and any records pertaining to the upgrading of railroad crossing No. 302-527-S. Shrewsberry did not appear with any of the requested documents, explaining that he thought Sterritt had already produced the fruits of his research and that the remaining records were shielded by 23 U.S.C. § 409.
Federal law bars discovery and introduction into evidence of any-reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of railway-highway crossings wdth federal funds. Fry, cited supra. Shrewsberry asserted that he was instructed by the Attorney General’s office and counsel for DOTD not to produce the subpoenaed documents they opined were protected by 23 U.S.C. § 409.
Some of the records Shrewsberry relied on when making his affidavit are in DOTD’s general files and may be admissible while other records may be privileged under federal law. See Fry, supra. Sterritt,- in any event, as counsel for the parish, at least had access to DOTD’s general files.
Additionally, we note that the record does not reflect that any defendant moved to quash plaintiffs’ subpoena duces tecum or sought a protective order from the trial court regarding records allegedly protected by 23 U.S.C. § 409. Defendants did file motions in limine as an alternative to the motions for summary judgment, but these motions sought to exclude evidence relating to restricted sight distance or the adequacy of the warning devices because of preemption. Surprisingly, these motions in limine do not mention 23 U.S.C. § 409.
From the record we conclude that the trial court did not consider Shrewsberry’s deposition when ruling on the motions. We note this exchange between the court and counsel:
|7The Court: If you- — Mr. Hobbs, if you have trouble with that witness in Baton Rouge, bring him — subpoena him to my court and we’ll — I’ll show him where -his privilege lies.
Mr. Hobbs: I attached a copy of his deposition to my opposition.
The Court: Well, I didn’t — Your opposition came in a little late. You know? And so I didn’t — We didn’t have the benefit of going over it yesterday or the day before. But, I’ll handle that when the time comes. Thank you, gentlemen.
(R. p. 208)
Shrewsberry reached his conclusion that federal funds were used to install warning devices at the Golson Road crossing after reviewing La. DOTD records, some of which may or may not be privileged under federal law.
Shrewsberry’s personal knowledge may resolve this court’s La. C.C.P. art. 967 dilemma. The portion of a deposition not based on personal knowledge should not be considered when deciding a motion for summary judgment. McCoy v. Physicians & Surgeons Hosp., Inc., 452 So.2d 308 (La.App. 2d Cir.1984), writ denied. See also Ivy v. Freeland, 576 So.2d 1117 (La.App. 3rd Cir.1991); Butler v. Reeder, 615 So.2d 1120 (La.App. 5th Cir.1993).
Personal knowledge is “something which the witness actually saw or heard as distinguished from something he learned from *973some other person or source.” Gardner v. Louisiana State University Medical Center in Shreveport, 29,946 (La.App. 2d Cir.10/29/97), 702 So.2d 63, 56.
We recognized a distinction between personal knowledge and knowledge gained from a reviéw of records in Farm Credit Bank of Texas v. Bassett, 26,780 (La.App. 2d Cir.4/5/95), 653 So.2d 206. There, the regional vice-president of the bank had drafted an affidavit in which he stated he had “personal knowledge, or knowledge based upon review of the business records maintained in the ordinary course of business-” The affidavit was ultimately found defective because the business records were not attached. This court then stated that the Igaffiant may have had personal knowledge, but found the affidavit to be unclear as to what the vice-president had actually relied on to determine the amount owed by the debtors.
At one point during his deposition, Shrews-berry seemed confused about the source of his knowledge. When asked if he researched any DOTD records before making the affidavit, he stated, “it’s hard for me to remember what I already had knowledge of and what was produced by the Parish’s attorney for me regarding this affidavit.”
Mid-South cites Brown v. Adolph, 96-1257 (La.App. 1st Cir.3/27/97), 691 So.2d 1321 in support of its argument that Shrewsberry possessed the requisite personal knowledge when making the statement that federal funds were utilized. The Brown court accepted an affidavit as being based on personal knowledge even though the affiant testified as to what he had found in his “personal review” of the company records. However, the Brown court also noted that the affiant’s testimony was supported by the very documents he had testified about.
In contrast, Shrewsberry’s statements in his affidavit and his deposition es-. sentially say the same thing: He relied on DOTD records to state that federal funds were used, including the records from DOTD’s general files that were researched by Sterritt. Compare Hester, supra, where the railroad introduced Mississippi DOTD records with an affidavit to show that federal funds were used at the crossing at issue in that Mississippi federal court proceeding. Ouachita Parish obviously did not originally view these documents as being privileged, having specifically listed “[documents reflecting use of federal funds on crossing signs at the crossing” as an exhibit and Shrewsber-ry as a witness in the Joint Pre-Trial Statement filed on May 8,1997.
IsWithout deciding whether or not specific documents merely reflecting the use of federal funds to install signs at the crossing are excluded under 23 U.S.C. § 409, we find that defendants, on this record at this juncture, have failed to establish that Shrewsberry had personal knowledge that federal funds were indeed used in the installation of warning devices at the Golson Road crossing, or, in the alternative, to explain adequately his failure to produce the documents relied upon in that determination. This conclusion is particularly true when Shrewsberry’s “knowledge” was refreshed by some records apparently viewed by the parish counsel and maintained under Shrewsberry’s supervision that may or may not have been privileged under federal law.
Under these circumstances, some non-privileged records should have been attached to the affidavit to support the motions for summary judgments. Of course, summary judgment should not be denied if attaching the documents in question would contravene 23 U.S.C. § 409.
While it seems apparent that appellees may eventually establish that federal funds were used to upgrade the Golson Road crossing, they have not done so on this record on the appeal of summary judgments.
We address the supplemental motion for summary judgment filed belatedly by the parish in an unpublished appendix to this opinion.
DECREE
At the cost of appellees, the summary judgments are reversed and the matter is remanded for further proceedings with leave to appellees to again seek summary judgments properly supported.-
BROWN, J., concurs with written reasons.