834 So.2d 1 (2002)
Lina BADER, et al., Plaintiff-Appellant,
v.
KANSAS CITY SOUTHERN RAILWAY COMPANY, et al., Defendant-Appellee.
No. 36,536-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2002.
J. Patrick Hennessy, Shreveport, Patrick A. Stegall, for Appellant.
Arthur R. Carmody, Jr., Shreveport, for Appellee, Kansas City Southern Railway Company and William C. Swaty.
Kenneth Mascagni, James R. Sterritt, Shreveport, for Appellee, City of Bossier City.
Louisiana Department of Justice, by James R. Dawson, Assistant Attorney General, for Appellee, State of Louisiana, through Department of Transportation and Development.
*2 Before WILLIAMS, KOSTELKA and HARRISON (Pro Tempore), JJ.
WILLIAMS, Judge.
The plaintiffs, Lina Bader and Munir Bader, individually and as administrator and tutor of the minor children, Amal Bader, Bader Bader, Dana Bader and Eman Bader, appeal a judgment granting summary judgment in favor of the defendant, State of Louisiana Department of Transportation and Development ("DOTD"). The district court found that the State had not assumed any duty to maintain the rail crossing where the accident occurred. For the following reasons, we affirm.

FACTS
On June 14, 1998, a van driven by Lina Bader was struck by a train owned by Kansas City Southern Railway Company ("KCS") at a railroad crossing in Bossier City, Louisiana. The collision occurred where Alfred Lane, an east-west city street, crosses the KCS railroad tracks a short distance to the east of U.S. Highway 71 (Barksdale Boulevard), which runs north-south and parallel to the tracks. As a result of the accident, Lina Bader and her four children, Amal Bader, Bader Bader, Dana Bader and Eman Bader, were injured.
The plaintiffs, Lina and Munir Bader, individually and on behalf of their minor children, filed a petition for damages against the defendants, KCS, its engineer William Swaty, the City of Bossier City (the "City") and DOTD. In October 2000, the DOTD filed a motion for summary judgment arguing that it did not have a duty to maintain the crossing where the injury occurred. The City filed an amended answer asserting third party fault.
At the hearing on the motion, counsel for plaintiffs, DOTD and the City presented argument. The court rendered judgment granting DOTD's motion for summary judgment. The district court held that plaintiffs failed to show that DOTD had assumed a duty to maintain the crossing. In its written opinion, the court also stated that the remaining defendants were not precluded from attempting to establish fault by the State. Plaintiffs appeal the judgment.

DISCUSSION
The plaintiffs contend the district court erred in granting DOTD's motion for summary judgment. Plaintiffs argue that an issue of fact exists regarding the question of whether DOTD assumed a duty to maintain the rail crossing and its approaches in a reasonably safe condition.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. LSA-C.C.P. art. 966(C)(2).
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must produce factual support which could satisfy his evidentiary burden at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the mover is entitled to summary judgment. Article 966(C)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources *3 v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
To establish a breach of the state's duty to provide a reasonably safe road, the plaintiff must prove: (1) the thing which caused the damage was in the care or custody of the state; (2) a hazardous condition existed; (3) the state had actual or constructive knowledge of the condition; and (4) the state failed to take corrective action within a reasonable period of time. Moore v. Kansas City Southern Railroad Co., 31,080 (La.App.2d Cir.10/28/98), 722 So.2d 296. A governing authority with jurisdiction over a particular roadway has a legal duty to make that highway reasonably safe for travel. LSA-R.S. 32:235; Fry v. Southern Pacific Transp. Co., 30, 540 (La.App.2d Cir.6/24/98), 715 So.2d 632.
Generally, the state does not have a duty to provide protection devices at railroad crossings on non-state, or off-system, roads. Webb v. Southern Pacific Railroad Co., 617 So.2d 618 (La.App. 3rd Cir.1993). The state may assume a duty to upgrade the warning devices for an off-system crossing by selecting it for improvement prior to the accident or by agreeing to install warning signs at such a crossing. Archon v. Union Pacific Railroad, 94-2728 (La.6/30/95), 657 So.2d 987; Rick v. State DOTD, 93-1776 (La.1/14/94), 630 So.2d 1271.
In 1973, Congress enacted the Highway Safety Act, 49 U.S.C. § 203, which created the Federal Railway-Highway Crossings Program to provide funding to the states for the cost of construction projects to eliminate hazards of railway-highway crossings. 23 U.S.C. § 130. In return, the state must conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require protective devices and establish and implement a schedule of projects for this purpose. Duncan v. Kansas City Southern Railway, XXXX-XXXX (La.10/30/00), 773 So.2d 670.
In the present case, DOTD moved for summary judgment alleging that the Alfred Lane railroad crossing was not part of the state highway system and was not under the state's control, such that DOTD did not owe plaintiffs a duty to maintain the crossing. DOTD submitted the affidavit of Bruce Easterly, the agency's administrator of district four, which encompasses Bossier Parish. Easterly testified that the railway crossing at Alfred lane did not traverse a roadway included as part of the state highway system. Easterly stated that DOTD did not have any responsibility for the care or maintenance of this crossing.
In his deposition, Easterly testified that where Alfred Lane intersects US-71, which is part of the state highway system, DOTD would help maintain the road surface, such as repairing a pothole in that part of Alfred Lane within DOTD's right-of-way. However, Easterly stated that Alfred Lane was a Bossier City street and not under the control of DOTD.
William Shrewsberry, Jr., the DOTD highway-railway safety engineer, testified by deposition that one of his primary duties was to administer DOTD's participation in the Federal Railroad Safety Program, which allocates federal funds through the states with the goal of increasing the safety of rail crossings with warning enhancements such as flashing lights, gates or other signals. Shrewsberry explained that an "on-system" highway is a roadway designated by the Louisiana legislature for maintenance by DOTD for the needs of commerce and that an on-system rail crossing is a place where a railroad track crosses a state highway. Shrewsberry stated that for on-system rail crossings, DOTD maintains the roadway *4 approaches up to the track cross ties, including installation of advance warning signs and pavement markings.
Shrewsberry described an "off-system" road as one that was not part of the state highway system, but was maintained by a parish or city. He stated that an off-system crossing was a place where a parish or city street crosses a railroad track. For an off-system crossing, the parish or city maintains the roadway approaches to the crossing, including warning signs and pavement markings.
Shrewsberry explained that for projects done under the Federal Railroad Safety Program, DOTD was required to collect information and keep an inventory database for all public rail crossings in the state. If a crossing needed a safety upgrade, then DOTD would get an agreement with the involved railroad for the work needed. For an off-system crossing, the responsible city or parish would be required to make a commitment to maintain and repair the advance warning signs and pavement markings on the approaches to the crossing. Then DOTD would request federal funding for the project and upon approval, the railroad would install the signs or other warning devices. Shrewsberry stated that a parish or city agreement was needed because DOTD did not perform maintenance of the off-system roadways.
In opposing the motion for summary judgment, the plaintiffs concede that DOTD did not undertake to place warning signs at the Alfred Lane crossing, but contend DOTD assumed a duty to maintain this off-system crossing because state employees conducted inspections and surveys of the public rail crossings in Bossier City and throughout the state and collected the information in an inventory database. However, Shrewsberry's testimony indicated that DOTD compiled information and kept the database of rail crossings to satisfy federal requirements for preserving the state's eligibility to receive federal railroad safety funds for crossing upgrades.
Plaintiffs have not produced authority to support their contention that DOTD's activities in administering the federal grant program constitute an assumption of a duty to maintain railroad crossings on streets which are under the jurisdiction of local parish or city governments. To the contrary, the deposition testimony demonstrated that for off-system railroad crossings, federal funding was contingent upon the consent of the city or parish to maintain the warning signs and pavement markings installed on their roads. Thus, plaintiffs cannot show that DOTD was obligating itself to maintain the warning devices at the Alfred Lane crossing by performing its statutory duties to facilitate the distribution of federal railroad safety funds.
Plaintiffs assert that DOTD has a responsibility to maintain the Alfred Lane crossing because DOTD's right of way along Barksdale Boulevard extends onto Alfred Lane at the approach to the railroad crossing. Plaintiffs also contend DOTD may be responsible for the placement of warning signs in its right-of-way on Alfred Lane and on Barksdale Boulevard.
Shrewsberry testified in his deposition that part of Alfred Lane is within DOTD's right-of-way and that DOTD would repair a pothole in its right-of-way. He stated that DOTD would keep the right-of-way reasonably clear and maintain the travel lanes where the city street connected to the state highway. However, Shrewsberry testified that DOTD would not have responsibility for warning signs placed on the city street approach to the Alfred Lane crossing, even though the street intersected *5 a state highway in close proximity to the crossing.
Regarding the lack of an advanced warning sign on the approach to the Alfred Lane crossing from Barksdale Boulevard, Shrewsberry testified that the Manual of Uniform Traffic Control Devices ("MUTCD") did not require an advance warning sign in that area because the distance from the intersection turnout to the center line of the train track was 100 feet or less. Shrewsberry explained that in this situation, the crossbuck in place at the crossing was deemed sufficient warning because vehicles would be approaching from the intersection at a relatively slow speed.
Concerning the placement of "parallel track" signs on Barksdale Boulevard, Shrewsberry stated that DOTD's responsibility to install such a sign would depend on the safety guidelines provided in the MUTCD. He testified that in this particular corridor, there was very good visibility from Barksdale Boulevard to the railroad crossing, so that a driver on the state highway would know of the railroad track and crossing. Shrewsberry stated that under the provisions of the MUTCD, a parallel track warning sign would not be necessary on Barksdale Boulevard in the area of Alfred Lane.
The deposition testimony and authority presented do not support the plaintiffs' contention that the presence of Alfred Lane within DOTD's right of way created a duty on the part of DOTD to maintain warning devices at the Alfred Lane crossing or place an advance warning sign on the approach to the off-system crossing. Rather, the evidence shows that pursuant to the MUTCD safety guidelines, DOTD was not obligated to install warning signs on the crossing approach or on Barksdale Boulevard.
Based upon this record, we must conclude that the plaintiffs have failed to produce evidence which would satisfy their burden of proving that the off-system railroad crossing at Alfred Lane was in the care or custody of the state, or that DOTD assumed a duty to maintain the warning devices at this crossing. Consequently, we cannot say that the district court erred in granting the motion for summary judgment. The assignment of error lacks merit.
Preclusive Effect of Summary Judgment
The plaintiffs contend the district court erred in declining to enter a judgment which would preclude the remaining defendants from attempting to establish fault on the part of DOTD. An appeal is the exercise of a party's right to have a judgment of a trial court revised or reversed by an appellate court. LSA-C.C.P. art.2082. An appeal may be taken from a final judgment, from an interlocutory judgment which may cause irreparable injury and from certain reformed judgments. LSA-C.C.P. art.2083. An appeal lies from the judgment itself, not from the reasons for judgment. Wilson v. Wilson, 30,445 (La. App.2d Cir.4/9/98), 714 So.2d 35.
Here, the plaintiffs seek to appeal a decision which is not part of the signed judgment, but is stated in the court's written opinion. The judgment itself addresses only the motion for summary judgment and does not refer to the issue of whether the remaining defendants may assert fault on the part of DOTD. Thus, the issue of third-party fault is not properly before this court. Consequently, we cannot consider the issue on appeal.

CONCLUSION
For the foregoing reasons, the district court's judgment granting the motion for summary judgment is affirmed. Costs of this appeal are assessed to the appellants, *6 Lina Bader and Munir Bader, individually and as legal representatives of their minor children, Amal Bader, Bader Bader, Dana Bader and Eman Bader.
AFFIRMED.