888 So.2d 961 (2004)
Herman GHRIGSBY, Individually and on Behalf of his Deceased Wife, Vicky Lynn Ghrigsby, Plaintiff-Appellant,
v.
The KANSAS CITY SOUTHERN RAILWAY COMPANY, State of Louisiana Department of Transportation and Development, Parish of Richland, City of Delhi, Charles E. Hamilton and Bernard L. Powell, Defendants-Appellees.
No. 38,988-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2004.
*962 Neblett, Beard & Arsenault by Gary J. Arsenault, for Appellant.
Charles C. Foti, Jr., Attorney General, Robert L. Bussey, Assistant Attorney General, for Appellee State of Louisiana, DOTD.
Wilkinson, Carmody & Gilliam, by Arthur R. Carmody, Jr., Shreveport, William R. Coenen, Jr., Rayville, for Appellee Kansas City Southern Railway Co., Charles E. Hamilton and Bernard L. Powell.
Hudson, Potts & Bernstein, by W. Craig Henry, Monroe, for Appellee City of Delhi.
Before STEWART, CARAWAY and MOORE, JJ.
STEWART, J.
This is a wrongful death action stemming from a railroad crossing collision which resulted in the death of Vicky Lynn Ghrigsby. The husband of the deceased and plaintiff herein, Herman Ghrigsby, appeals the dismissal of his claims against the State of Louisiana, through the Department of Transportation and Development ("DOTD") by summary judgment. We find that DOTD's properly supported motion for summary judgment clearly establishes that the plaintiff's state tort claims are preempted by federal law. Accordingly, we affirm the judgment of the trial court.

FACTS
On March 19, 1996, Vicky Lynn Ghrigsby was killed when a Kansas City Southern Railway Company ("KCS") train collided into her vehicle at an "off-system" crossing located on Oak Street in Delhi, Louisiana.[1] The crossing has two sets of tracks traversing Oak Street in an east/west direction and running parallel to U.S. Highway 80, which is located north of the tracks. A traffic light governs the intersection of Oak Street and U.S. Highway 80. The accident occurred when Mrs. Ghrigsby, who was traveling north on Oak Street toward the traffic light at U.S. Hwy. 80, drove into the path of an oncoming train and stopped behind two other vehicles with the rear of her vehicle still on the tracks.
Mrs. Ghrigsby's husband, Herman Ghrigsby, filed a suit for damages against KCS and two of its employees, DOTD, the Parish of Richland, and the City of Delhi. This matter involves only the claims against DOTD, as all other claims have either been dismissed or settled.
Mr. Ghrigsby alleged that DOTD was at fault for failing to upgrade the warnings at the crossing, failing to supervise maintenance of the crossing, and failing to adequately design the crossing area to insure safety. He also alleged that DOTD had failed to install necessary warning devices, such as advanced warning signs, appropriate street markings, automatic gates, and *963 signals to warn motorists of on-coming trains.
DOTD denied fault and filed a motion for summary judgment on May 3, 1999, asserting that it had assumed no responsibility to upgrade the off-system crossing. The motion was supported by the affidavit of William C. Shrewsberry, Jr., DOTD's Highway/Rail Safety Engineer, who attested that the Oak Street crossing was not scheduled for upgrades. Other evidence offered in support of the motion included both the City of Delhi's admission that it was responsible for maintenance of the advance warning signs at the crossing and KCS's admission that it was responsible for maintenance of the crossbuck signs.[2]
Opposing DOTD's motion for summary judgment, Mr. Ghrigsby argued that there were issues of fact as to whether DOTD, which used federal funds to place warning signs at the crossing, was responsible for sign placement and maintenance and whether the advance warning sign for northbound traffic on Oak Street was in place at the time of the accident. Photographs taken some time after the accident showed only a crossbuck sign at the crossing. The advance warning sign appeared to be missing from its pole. Mr. Ghrigsby offered DOTD records to show the use of federal funds to place warning signs at the crossing. The trial court denied DOTD's motion for summary judgment on February 19, 2001, without specifying the issues of fact precluding summary judgment.
After amending its answer to assert the affirmative defense of preemption, DOTD filed a second motion for summary judgment on February 19, 2001, on the grounds of preemption. DOTD argued that federal law preempts Mr. Ghrigsby's state tort claims based on the adequacy of the warning signs at the crossing, because federal funds were used to install the warnings at the Oak Street crossing. In support of its motion for summary judgment, DOTD offered another affidavit by Shrewsberry, who attested that he reviewed DOTD records pertaining to State Project No. 437-04-15. Pursuant to this state project, DOTD and the Louisiana Highway Safety Commission used Federal Highway Safety Act funds to place railroad advance warning signs and crossbucks at various crossings, including the Oak Street crossing. Copies of the records reviewed by Shrewsberry were attached to his deposition as exhibits. Excerpts from Shrewsberry's deposition relating to the same subject matter were also offered in support of DOTD's motion.
Mr. Ghrigsby filed a cross motion for summary judgment against DOTD and an opposition to DOTD's motion asserting that DOTD violated federal regulations by not installing automatic gates with flashing light signals at the Oak Street crossing. Mr. Ghrigsby argued that by using federal funds to install warnings at the crossing, DOTD had a duty to comply with the federal regulations and breached that duty. Mr. Ghrigsby asserted that preemption does not apply to claims against DOTD for failing to comply with the federal regulations.
In a judgment rendered February 4, 2004, the trial court granted DOTD's motion for summary judgment and dismissed all of the plaintiff's claims against it. The court found that the summary judgment evidence established that federal funds were used to place warning signs at the Oak Street crossing and concluded that the plaintiff's state law claims based on the *964 alleged inadequacy of the warning devices were preempted.
Following the trial court's adverse judgment, Mr. Ghrigsby appealed. KCS and the City of Delhi filed an amicus curiae brief. Mr. Ghrigsby filed a motion to strike the brief. This court then ordered a response from KCS and the City of Delhi to show compliance with U.R.C.A. Rule 2-12.11. The motion to strike was referred to the appellate panel for consideration. KCS and the City of Delhi filed a response establishing compliance with U.R.C.A. Rule 2-12.11 as ordered by this court. The motion to strike is denied, and the amicus curiae brief has been considered with the others.

DISCUSSION
The assignments of error and issues raised by Mr. Ghrigsby on appeal question whether DOTD met its burden of proof on summary judgment. The principal issue, one of first impression in this state, is whether federal preemption applies to claims against the state in the same manner as it applies to claims against a railroad company. Mr. Ghrigsby asserts that DOTD failed to prove that federal funds were used to replace the warning devices on Oak Street, particularly the crossbuck visible on Mrs. Ghrigsby's approach to the crossing. He also asserts that DOTD failed to prove that it obtained approval to circumvent federal regulations requiring automatic gates with flashing light signals at the crossing or that it had no duty to upgrade the crossing. Additionally, Mr. Ghrigsby questions whether Shrewsberry's affidavit and exhibits attached thereto met the requirements of La. C.C.P. art. 967. As a final matter, Mr. Ghrigsby asserts error as to a ruling by the trial court concerning evidence protected under 23 U.S.C. § 409; however, this assignment of error has been abandoned and will not be addressed in this opinion.

Summary Judgment Law
The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law. La. C.C.P. art. 966(A)(2); Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. We conduct a de novo review of the trial court's grant of summary judgment, viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant. Hines v. Garrett, XXXX-XXXX (La.6/25/04), 876 So.2d 764, 765, rehearing denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1134. A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B).
A material fact is one that potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Garsee v. Bowie, 37,444 (La.App.2d Cir.8/20/03), 852 So.2d 1156, 1159. A genuine issue exists when reasonable persons could disagree. However, "if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." Hines v. Garrett, 876 So.2d at 765-766, citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
DOTD bears the burden of proving that the affirmative defense of preemption applies. In Hines v. Garrett, supra, the Louisiana Supreme Court addressed the burden of proof applicable on summary judgment when the movant will also bear the burden of proof at trial on the subject *965 matter of the summary judgment motion.[3] The court stated:
If the party moving for summary judgment will bear the burden of persuasion on the subject issue at trial, that party must support his motion with credible evidence that would entitle him to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. However, ... "[i]f there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment...." (Citations omitted.)
Hines v. Garrett, 876 So.2d at 766-767. We will use these standards to guide our de novo review of the grant of summary judgment.

La. C.C.P. art. 967 Compliance
The initial matter to be addressed is Mr. Ghrigsby's contention that William Shrewsberry's affidavits did not meet the requirements of La. C.C.P. art. 967. Ghrigsby argues that the affidavits were not based on personal knowledge and were not accompanied by sworn or certified copies of the documentation referred to in the affidavits. La. C.C.P. art. 967(A) requires that affidavits "shall be made on personal knowledge" and that "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."
Mr. Ghrigsby cites Jarvis v. Mid-South Rail Corp., 30,860 (La.App.2d Cir. 8/24/98), 716 So.2d 969, wherein this court, in a similar case, refused to consider the affidavit of William Shrewsberry in ruling on a motion for summary judgment in the absence of evidence that the affidavit was based on his personal knowledge. In Jarvis, Shrewsberry's affidavit stated that he reviewed DOTD records in reaching his conclusion that federal funds were used to upgrade a crossing. However, the DOTD records were not attached to his affidavit and were not produced by Shrewsberry at his deposition in response to a subpoena duces tecum. The failure to attach the documents reviewed by Shrewsberry was fatal to a consideration of his affidavit for purposes of the summary judgment motion. In the absence of the DOTD records, the court could not determine the basis of Shrewsberry's personal knowledge or review what he relied upon for purposes of his affidavit.
Unlike in Jarvis, the DOTD records for State Project No. 737-04-15 reviewed by Shrewsberry were attached to his affidavits of September 12, 2001, and January 14, 2004, both filed in support of DOTD's motion for summary judgment. These records substantiate the information in Shrewsberry's affidavit. In his position as DOTD's Highway/Rail Safety Engineer, Shrewsberry oversees the administration of the Federal Highway Safety Program, the distribution of federal funds for crossing upgrades, the upkeep of the National Railroad Inventory Database, and agreements for DOTD railroad-related construction projects. His position and responsibilities make him competent to attest as to the use of federal funds by DOTD for upgrades at the Oak Street crossing as *966 indicated by DOTD's files. The attachments make clear what documentation Shrewsberry relied upon in determining that federal funds were used to place warning signs at the Oak Street crossing.
Additionally, the project file records appear to have been certified by Linda F. Grigsby, an assistant custodian of the official records of DOTD. This certification is included in the record. Although Shrewsberry's affidavit of January 14, 2004, indicates that he reviewed records certified by "Linda Hendricks," we do not find that the difference in surnames creates an issue regarding whether the project file records were properly certified. It does not appear from the record that the plaintiff opposed summary judgment on the basis of lack of certification of the DOTD project file. In fact, throughout these proceedings, the plaintiff, Mr. Ghrigsby, also used the DOTD project file records in opposing DOTD's motions for summary judgment and in support of his own motion for summary judgment against DOTD.
For these reasons, we find no merit to Mr. Ghrigsby's assignments of error regarding La. C.C.P. art. 967 compliance. We now turn to consider whether DOTD met its burden of affirmatively showing that Mr. Ghrigsby's claims regarding inadequate warning signs or design of the crossing are preempted by federal law.

Scope of Preemption
In Furlough v. Union Pacific Railroad Company, 33,658 (La.App.2d Cir.8/31/00), 766 So.2d 751, writ denied, 2000-2929 (La.1/12/01), 781 So.2d 556, this court held that a claim against a railroad company as to the adequacy of warning devices at a crossing was preempted by regulations enacted through the Federal Highway Administration ("FHWA") in implementing the Federal Railway-Highway Crossings Program (Crossings Program)., 23 U.S.C. § 130. We are now to determine whether these same regulations preempt similar claims against the state.
Under the Crossings Program, each state is required to "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). The schedule of projects must, at a minimum, provide signs for all railway-highway crossings. Id. Federal funds are available under the Crossings Program to cover "the entire cost of construction of projects for the elimination of hazards of railway-highway crossings." 23 U.S.C. § 130(a).
At issue here is whether Crossing Program regulations pertaining to the design of grade crossing improvements preempt the plaintiff's claims regarding the adequacy of the warnings at the Oak Street crossing.[4] The applicable regulations are set forth at 23 C.F.R. § 646.214(b)(3) and (4), *967 which governs grade crossing improvements and states:
(3)(i) Adequate warning devices, under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
(A) Multiple main line railroad tracks.
(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
(C) High speed train operation combined with limited sight distance at either single or multiple track crossings.
(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.
(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
(F) A diagnostic team recommends them.
(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.
(4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.
This regulation requires the installation of automatic gates with flashing lights at crossings where the (b)(3)conditions exist and federal funds are used to install the warnings. Otherwise, where the (b)(3) conditions are not applicable, FHWA approval of the type of warning device to be installed is required.
In CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the United States Supreme Court determined that 23 C.F.R. § 646.214(b)(3) and (4) establishes "requirements as to the installation of particular warning devices," which, when applicable, preempt state tort law. The court explained that these regulatory provisions "displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained."[5] (Emphasis added.) Easterwood, supra, at 670, 113 S.Ct. 1732.
In Norfolk Southern Railway Company v. Shanklin, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000), the Supreme Court again examined the preemptive scope of 23 C.F.R. § 646.214(b)(3) and (4) and followed the Easterwood decision that these regulations "pre-empt state tort claims concerning the adequacy of all warning devices installed with the participation of federal funds." Shanklin, 529 U.S. at 357, 120 S.Ct. 1467. Shanklin involved a state law tort suit brought by a widow of a motorist killed in a crossing accident. The widow sued the railroad company alleging that it failed to maintain adequate warning devices at the crossing. The warning devices at the crossing when *968 the accident occurred included advance warning signs and reflectorized crossbucks that had been installed using federal funds.
The court held that the widow's state tort claim regarding inadequate warnings at the crossing was preempted. Because the state used federal funds, the selection and installation of the signs was governed by §§ 646.214(b)(3) and (4). The state's decision to use warning devices other than automatic gates and flashing lights was subject to FHWA approval under § 646.214(b)(4). Upon approval and use of the federal funds to install the signs, the federal standard for adequacy displaced the state laws addressing the same subject, thereby preempting the widow's state tort claim.
In reaching its holding, the court explained the operation of preemption as follows:
When the FHWA approves a crossing improvement project and the State installs the warning devices using federal funds, §§ 646.214(b)(3) and (4) establish a federal standard for the adequacy of those devices that displaces state tort law addressing the same subject. At that point, the regulation dictates "the devices to be installed and the means by which railroads are to participate in their selection." Easterwood, supra, at 671, 113 S.Ct. 1732. It is this displacement of state law concerning the devices' adequacy, and not the State's or the FHWA's adherence to the standard set out in §§ 646.214(b)(3) and (4) or to the requirements of the MUTCD, that pre-empts state tort actions. Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the pre-emption question.
Shanklin, supra at 357-358, 120 S.Ct. 1467.
Although Shanklin involved a suit against a railroad company, its holding and rationale have been applied to pre-empt similar claims against states and other governmental entities. See Smallwood v. Illinois Central Railroad Co., 203 F.Supp.2d 686 (S.D.Miss.2002), judgment vacated on other grounds (fraudulent joinder), 342 F.3d 400 (5th Cir.2003), reh'g denied, 352 F.3d 220 (5th Cir.2003), reh'ing en banc granted, opinion vacated, 355 F.3d 357 (5th Cir.2003), finding a state tort claim against the Mississippi Department of Transportation challenging the adequacy of warnings at a crossing preempted under federal law. See also Fifth Third Bank v. CSX Corporation, 306 F.Supp.2d 841 (N.D.Ind.2004), finding state tort claim against county for inadequate warning devices at crossing preempted under the rationale of Shanklin.
In Hernandez v. State, 680 N.W.2d 108 (Minn.App.2004), the court rejected the argument that the rationale of Easterwood and Shanklin does not apply to governmental entities as defendants. The court explained:
Because the essential question in the state negligence action is whether the defendant has a duty to the plaintiff, the issue is "whether the final authority to decide what warning system is needed has been taken out of the railroad's and the state's hands....
(Citations omitted.) Hernandez, 680 N.W.2d at 114. The court concluded that neither the state nor the railroad is "duty bound in the tort sense, for causes of action based on the adequacy of the crossing safety device." Id.
Having reviewed Shanklin and related jurisprudence, we hold that state law tort claims against the state or other governmental entities alleging the inadequacy *969 of warning devices at crossings where the warnings were installed pursuant to the Crossings Program and with the participation of federal funds and approval are preempted by federal law. Our holding is supported by both Easterwood and Shanklin. Both affirmatively state that the regulations of § 646.214(b)(3) and (4) establish a federal requirement that certain protective devices be installed or federal approval obtained and thereby displace both state and private decision-making authority. This federal displacement of the state's authority also displaces the state laws addressing the same subject matter, thereby pre-empting state tort claims regarding adequacy of the warnings.

Review of Summary Judgment
Mr. Ghrigsby argues that summary judgment should not have been granted, because DOTD failed to prove that federal funds were used to replace the crossbuck at the Oak Street crossing. Mr. Ghrigsby further argues that even if federal funds were used, DOTD did not prove that approval was obtained to install something other than active warning devices, such as automatic gates with flashing lights. It is Mr. Ghrigsby's contention that conditions at the crossing included factors listed in § 646.214(b)(3). Finally, Mr. Ghrigsby argues that DOTD assumed the duty to upgrade the crossing and that it breached this duty by installing advance warning signs and a crossbuck instead of following the federal regulations requiring automatic gates with flashing lights.
The project file records submitted by DOTD as attachments to Shrewsberry's affidavits establish the use of federal funds to upgrade the Oak Street crossing in 1980, when advance warning signs and a crossbuck were placed at the crossing. The project file exhibit includes the state's application for funds from the United States Department of Transportation for use in a railway crossings signs/identifiers project. The project file records include a 1980 letter from DOTD's Project Control Engineer, Joseph Wax, to the mayors of the towns where crossings were to be upgraded. The mayor of Delhi was among the listed recipients. This letter informed the mayors as follows:
The Louisiana Department of Transportation and Development in cooperation with the Louisiana Highway Safety Commission is making use of Federal Aid Highway Safety Act Funds to provide Railroad Advance Warning Signs and Railroad Crossbuck Warning Signs at all railway grade crossings on local roads and streets.
The letter further informed the mayors that local governing authorities would be responsible for maintaining the advance warning signs and that the railroads would be responsible for maintaining the crossbuck signs.
This documentation from the project file unequivocally establishes the use of federal funds to upgrade the Oak Street crossing. In addition, during the course of the trial court proceedings, this fact was not disputed by the plaintiff. Mr. Ghrigsby, in his own motion for summary judgment against DOTD and in opposing DOTD's motion, asserted as an uncontroverted fact that the state applied for and obtained federal funds to upgrade the Oak Street crossing.
We find no merit to Mr. Ghrigsby's argument that DOTD's evidence does not show whether federal funds were used for the crossbuck on the side approached by Mrs. Ghrigsby. The exhibits show that federal funds were used to place two advance warning signs and a crossbuck sign at the Oak Street crossing. This fact is not in dispute. Presumably, these signs were determined to have been sufficient *970 given the conditions at the crossing at the time of the upgrade. Whether the state should have originally installed different or additional warning devices or whether conditions at the crossing have changed is immaterial to the question of preemption. Shanklin, supra, at 358, 120 S.Ct. 1467. Mr. Ghrigsby's arguments that conditions at the crossing included factors listed in § 646.214(b)(3), which require placement of automatic gates with flashing light signals, and that DOTD breached its duty by failing to follow the mandates of the federal regulation do not raise a genuine issue for trial. Similar arguments were raised in Shanklin and rejected by the Supreme Court on the basis that such arguments misconceive how preemption operates. When the crossing project is approved and the warning devices installed using federal funds, the federal standard for adequacy of the warning devices displaces state tort law. The court concluded, "It is this displacement of state law concerning the devices' adequacy, and not the State's or the FHWA's adherence to the standard set out in §§ 646.214(b)(3) and (4) or to the requirements of the MUTCD, that pre-empts state tort actions." Shanklin, supra, at 357-358, 120 S.Ct. 1467.
Additionally, the fact that the advance warning sign may have been missing at the time of the accident has no bearing on DOTD's liability or the application of preemption. The court in Fifth Third Bank v. CSX, 306 F.Supp.2d at 850, rejected a similar argument regarding a crossbuck that may have lost its reflectivity. Citing Shanklin, the court found that the change in condition of the sign was immaterial to the question of preemption. In the case sub judice, the exhibits offered by the state, including responses to interrogatories by Delhi and the letter described above, clearly establishes that Delhi, not the state, was the party responsible for maintenance of the advance warning signs. Thus, Delhi would likely be the party responsible for the missing sign. There is no evidence in the record to indicate that DOTD had notice of the missing sign or any deficiency at the crossing.
We also find no merit to Mr. Ghrigsby's argument that DOTD failed to show it obtained approval to circumvent regulations requiring automatic gates with flashing lights or that DOTD breached its duty to upgrade the crossing with these active devices. The state applied for, obtained, and used federal funds to upgrade the Oak Street crossing. The state's project file shows federal approval of the project as evidenced by letters of April 16, 1981, originating from the Louisiana Department of Highways and DOTD. The letters state that final inspection of the project was made on February 20, 1981, with a DOTD representative and a representative from the Federal Highway Administration and that the work was complete and in accordance with the plans and specifications.
The state project file records submitted in support of DOTD's motion clearly establish federal approval for the project and crossing upgrades made. Approval is also evidenced by the state's use of the federal funds to upgrade the crossing. In Hester v. CSX Transportation, Inc., 61 F.3d 382 (5th Cir.1995), cert. denied, 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996), the plaintiff argued that there was no evidence in the record demonstrating federal approval of the passive warning devices installed. The court disagreed, noting that the federal statutes and regulations preclude such an argument. The court explained, "The fact that federal funds participated in the installation of the warning devices legally presupposes that the Secretary [of Transportation] approved and authorized that expenditure, which in turn legally presupposes that the Secretary determined *971 that the safety devices installed were adequate to their task." Id. at 387. The record before us includes an affirmative showing of federal approval for the installation of the advance warning signs and crossbuck at the Oak Street crossing and the participation of federal funds in the installation of the warning signs.
Mr. Ghrigsby refers to two cases which he asserts support his arguments against summary judgment. The first is Hargrove v. Missouri Pacific Railroad Co., 2003-818 (La.App. 3d Cir.12/17/03), 861 So.2d 903, writ denied, XXXX-XXXX (La.3/26/04), 871 So.2d 349, which involved an appeal from a partial summary judgment in favor the railroad on the issue of federal preemption. The third circuit reversed the trial court upon finding that the exhibits, which included documents from DOTD, failed to show that federal money was used to install warning devices at the crossing in question or that federal approval was ever obtained for the warning devices installed. While Hargrove is an analogous case, it contains limited information and is neither persuasive nor instructive in our consideration of the record before this court on the motion for summary judgment.
The second case, Archon v. Union Pacific Railroad, 94-2728, 94-2743 (La.7/2/96), 675 So.2d 1055, is a rehearing opinion addressing whether DOTD had assumed a duty to upgrade a crossing with active warning devices before the accident occurred. Prior to the accident, DOTD had ordered a site survey for purposes of upgrading the crossing with active signals. This case is inapposite to the case at hand. Mr. Ghrigsby has not come forth with any evidence to show that DOTD assumed a duty to upgrade the crossing prior to the accident. Although he contends that this duty arose when the state contracted to install the advance warning signs and crossbuck at the Oak Street crossing, that contention fails due to the operation of preemption as addressed in this opinion.
From our de novo review of the evidence submitted on the motion for summary judgment, we find that summary judgment was proper. DOTD presented credible evidence to affirmatively establish that the plaintiff's claims are preempted, whereas Mr. Ghrigsby failed to come forth with any evidence to demonstrate an issue for trial. Because the evidence establishes that federal funds participated in the installation of the warning devices at the Oak Street crossing, the plaintiff's claims alleging the adequacy of the warning devices at the crossing are preempted.

CONCLUSION
For the reasons stated in this opinion, the judgment of the trial court is affirmed. Costs of appeal are assessed to the appellant.
AFFIRMED.
NOTES
[1] An off-system crossing is one not included in the state system of roads and highways.
[2] The crossbuck sign is an X-shaped sign that reads "RAILROAD CROSSING," and the advance warning sign is a circular yellow sign marked "RR."
[3] La. C.C.P. art. 966(C)(2) addresses the summary judgment burden of proof when the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment.
[4] The express preemptive provision is set forth at 49 U.S.C. § 20106, as part of the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101 et seq. Section 20106 states:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order 
(1) is necessary to eliminate or reduce an essentially local safety hazard;
(2) is not incompatible with a law, regulation, or order of the United States Government; and
(3) does not unreasonably burden interstate commerce.
[5] The requirements for preemption were not met in Easterwood, because federal funds did not participate in the installation of warning devices at the crossing where the accident occurred. The warning devices for which federal funds had been obtained were never installed.