WILLIAMS, J.
liPlaintiffs, Lina Bader and Munir Bad-er, individually and as administrator of the estates and as natural tutor of the minor children, Amal Bader, Bader Bader, Dana Bader and Eman Bader, appeal a judgment granting summary judgment in favor of the city of Bossier City (“the City”). The district court concluded that plaintiffs’ state law claims were preempted by federal law. For the reasons assigned below, we affirm the district court’s ruling.
FACTS
On June 14, 1998, a vehicle being driven by plaintiff, Lina Bader, was struck by a train owned by Kansas City Southern Railway Company (“KCS”) at a railroad crossing in Bossier City, Louisiana. The collision occurred where Alfred Lane crosses the KCS railroad tracks a short distance to the east of U.S. Highway 71 (“the Alfred Lane crossing”). Lina Bader and her four children, Amal Bader, Bader Bader, Dana Bader and Eman Bader, were injured as a result of the collision.
Subsequently, plaintiffs, Lina and Munir Bader, individually and as administrators and tutors of their minor children, filed the instant lawsuit, naming as defendants KCS, William C. Swatty (the train’s engineer), the City and the State of Louisiana through the Department of Transportation and Development (“DOTD”).[1]
The City filed a motion for summary judgment, contending, inter | 2aim, federal preemption precludes plaintiffs’ claims against the City. The district court granted summary judgment in favor of the City, concluding plaintiffs’ claims were preempted by federal law.[2] This appeal followed.
*1154 DISCUSSION
Plaintiffs contend the City failed to meet its burden of proving that plaintiffs’ claims are precluded by federal preemption. Therefore, plaintiffs argue, the district court erred in concluding that the City was entitled to summary judgment.
LSA-C.C.P. art. 966 provides, in pertinent part:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiffs motion may be made at any time after the answer has been filed. The defendant’s motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
[[Image here]]
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on lathe motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
[[Image here]]
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but to determine whether there is a genuine issue of material fact, i.e., an issue on which reasonable persons could disagree. Barringer v. Rausch, 39,553 (La.App.2d Cir.4/6/05), 900 So.2d 232; Peretin v. Caddo Parish School Bd., 39,170 (La.App.2d Cir.12/15/04), 889 So.2d 1190. An appellate court reviews the district court’s grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn therefrom in the light most favorable to the non-movant. Id.
When federal law “covers” or “substantially subsumes” a particular subject matter, state law is preempted under the Supremacy Clause. U.S. Constitution, Art. VI; Norfolk Southern Railway Co. v. Shanklin, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000). Preemption occurs when Congress enacts a federal law that is intended to occupy or control an area of law. When Congress acts to control a particular subject matter, individual states are prevented from interfering in any way with the federal scheme or regulation of that area. Shanklin, supra; CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).
|4The Federal Railroad Safety Act (“FRSA”) grants the Secretary of Trans *1155 portation the authority to “prescribe regulations and issue orders for every area of railroad safety.” 49 U.S.C. § 20103(a). 49 U.S.C. § 20106 contains an express preemption provision, which provides:
Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.
[[Image here]]
Following the enactment of the FRSA, Congress established the Highway Safety Act, which, inter alia, created the Federal Railway-Highway Crossings Program (“Crossings Program”). 23 U.S.C. § 130. Thereafter, the Secretary of Transportation promulgated regulations implementing the Crossings Program, including 23 C.F.R. § 646.214(b), which, in part, addresses the adequacy of warning devices installed under the Crossings Program. 23 C.F.R. § 646.214(b) provides, in pertinent part:
[[Image here]]
(3)(i) Adequate warning devices, under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
(A) Multiple main line railroad tracks.
(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the | ^crossing.
(C) High Speed train operation combined with limited sight distance at either single or multiple track Crossings.
(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.
(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
(F) A diagnostic team recommends them.
(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable. (4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.
The scope of federal preemption, as it concerns railroad crossings, is quite broad, and' state law claims will be preempted by federal law if the defendant shows the warning devices at the crossing in question were installed using federal funds. Shanklin, supra. Federal preemption is also triggered when a crossing is located within the limits of or near the terminus of a federal-aid highway project. Id.; 23 C.F.R. 646.214(b).
In Furlough v. Union Pacific R.R. Co., 33,658 (La.App.2d Cir.8/31/00), 766 So.2d 751, writ denied, 2000-2929 (La.1/12/01), 781 So.2d 556, following a fatal train/car collision, the plaintiffs filed suit against the *1156 railroad company, the train’s engineer, the city of Monroe and various | ¿insurance companies. The railroad company filed a partial motion for summary judgment and, alternatively, a motion in limine, raising the issue of federal preemption. After an exhaustive review of the relevant statutes and jurisprudence, this court concluded that the plaintiffs’ state law tort claims were preempted by federal law. Quoting Shanklin, supra, we stated:
Since the State “determined that warning devices other than automatic gates and flashing lights were appropriate, its decision was subject to the approval of the [Federal Highway Administration] (“FHWA”),” and “[o]nee the FHWA approved the project and the warnings signs were installed with federal funds, the federal standard for adequacy displaced [Louisiana law] addressing the same subject, thereby preempting [Plaintiffs’] claim.”
Furlough, 766 So.2d at 759.
The Louisiana Supreme Court considered the issue of federal preemption in Duncan v. Kansas City Southern Railway Company, 2000-0066 (La.10/30/00), 773 So.2d 670, cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001). Plaintiffs herein rely upon Duncan to support their contention that the City failed to meet its burden of proving that the warning devices at the Alfred Lane crossing were installed with the use of federal funds.
In Duncan, the railroad introduced evidence which indicated that federal funds had been used as part of a project to install or replace warning signs at the crossing at which the accident occurred. However, there was no evidence to show that the signs were “replaced or installed” with the use of federal funds. Rather, the evidence indicated that the signs encountered during the project were already in place, “in good condition” and could 17remain in place. The court concluded, absence proof that the warning devices were actually installed or replaced at the crossing with the use of federal funds, the plaintiffs’ state law negligence claims were not preempted by federal law.
Recently, in Ghrigsby v. Kansas City Southern Ry. Co., 38,988 (La.App.2d Cir.10/29/04), 888 So.2d 961, writ denied, 2004-2897 (La.2/4/05), 893 So.2d 885, we considered the issue of whether claims against the state are preempted by 23 C.F.R. § 646.214(b)(3) and (4). We examined Shanklin and its line of cases and held that “state law tort claims against the state and other governmental entities alleging the inadequacy of warning devices at crossings where the' warnings were installed pursuant to the Crossings Program and with the participation of federal funds and approval are preempted by federal law.” Ghrigsby, 888 So.2d at 968-69.
In the instant case, in support of its motion for summary judgment, the City introduced into evidence the deposition of William Shrewsberry, the Highway/Rail Safety Engineer for DOTD. Shrewsberry testified that the Alfred Lane crossing was included in Federal Highway Safety Project No. 7370416, a project which utilized federal funds to install warning devices. Prior to Project No. 7370416, there were no advanced warning signs at the Alfred Lane crossing. According to Shrewsber-ry, DOTD records and crossing inventories indicate that the warning devices at the Alfred Lane crossing, two cross buck signs, were placed pursuant to the federally funded Project No. 7370416.
Additionally, Bruce Easterly, the DOTD district manager |sadministrator whose area included Bossier City, testified that Project No. F-174(7) was completed with federal funds. Pursuant to that project, U.S. Highway 71 was widened to four lanes, including the left turn lane and the *1157 approach to Alfred Lane used by plaintiff in this case.
In Duncan, supra, the evidence revealed that the warning devices at the railroad crossing were in place prior to the federally funded highway project, and there was no evidence to indicate that the signs had been replaced. In this case, our de novo review of the record reveals that the City presented credible evidence to establish that the plaintiffs’ claims are preempted, and plaintiffs failed to come forth with any evidence to demonstrate an issue for trial. As stated above, Shrewsberry’s testimony establishes that the signs at the Alfred Lane crossing were not in place prior to Federal Highway Safety Project No. 7370416 and were placed pursuant to that project. Plaintiffs produced no evidence to the contrary. For these reasons, we find that summary judgment was proper.[3]
CONCLUSION
For the reasons stated above, the trial court’s grant of summary judgment in favor of the City is hereby affirmed. Appeal costs are assessed to appellants, Lina Bad-er and Munir Bader, individually and as administrator of the estates and as natural tutor of the minor children, Amal Bader, Bader Bader, Dana Bader and Eman Bad-er.
AFFIRMED.

. The trial court granted summary judgment in favor of DOTD, and this court affirmed, concluding plaintiffs "failed to produce evidence which would satisfy their burden of proving that the off-system railroad crossing ... was in the care or custody of the state, or that DOTD assumed a duty to maintain the warning devices at this crossing." Bader v. Kansas City Southern Railway Co., 36,536 (La.App.2d Cir. 12/20/02), 834 So.2d 1, 5.

. Due to its conclusion with regard to federal preemption, the district court declined to ad *1154 dress the City's remaining arguments, to wit: (1) no legal duty was breached; (2) the City is entitled to statutory immunity; (3) the evidence was insufficient to support plaintiffs' claims.

. In reaching this conclusion, we need not address the City's answer to the appeal in which it raised arguments with regard to breach of duty, insufficient evidence and statutory immunity,